UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
APR 10 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Randolph S. Koch** )
7701 Woodmont Avenue, Apt. 807 )
Bethesda, MD 20814 )
phone: (301) 656-0645, )
)
Plaintiff )
)
v. )
) CASE NUMBER 1:06CV00656
) JUDGE: Paul L. Friedman
**Christopher Cox** )
in his capacity as Chairman ) DECK TYPE: Employment Discrimination
U.S. Securities and Exchange Commission )
100 F Street, N.E. ) DATE STAMP: 04/10/2006
Washington, D.C. 20549, )
)
Defendant )
)

JURY ACTION

## COMPLAINT

### Nature of the Action

1. This is a federal sector equal employment opportunity action in which Plaintiff seeks declaratory and injunctive relief, compensatory damages and other relief in connection with an adverse personnel action taken against him by the United States Securities and Exchange Commission, his employing agency (the "Agency"). Such actions were discriminatory and in retaliation for activity protected under the civil rights and equal employment opportunity laws applicable to the federal government.

### Jurisdiction

2. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, 2202, and 2202, as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; Sections 501

and 505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794; and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

**Venue**

3. Venue is proper in the District of Columbia because the actions complained of took place there.

**Parties**

4. Randolph S. Koch is a citizen of the United States and a resident of Bethesda, Maryland. He is now and at all times hereafter mentioned was an employee of the United States Securities and Exchange Commission, having been continuously employed by that agency since December 16, 1991.

5. Defendant Christopher Cox is the Chairman of the Securities and Exchange Commission. He is sued in that capacity.

**Factual History**

6. Plaintiff is a white male. His age at the time of the alleged discriminatory and retaliatory action was over 40 years of age. His religion is Jewish. Plaintiff suffers from several major medical conditions which are disabling, including cardiovascular disease, gout and obstructive sleep apnea. In particular, major life activities limited by his medical conditions include breathing, sleeping, circulation of blood, working and walking. In addition, Koch also has a record of such limitations and is regarded by his employer as having such limitations.

7. Plaintiff has filed multiple complaints alleging violations of Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act, and has otherwise participated in the agency EEO process.

9. Plaintiff has been employed during his entire tenure at the Agency as a GS-12 Financial Analyst and SK-12 Financial Analyst. His work assignments, however, are almost virtually identical to the work assignments given attorneys in the Disclosure Office in which he works. To the extent the assignments are not identical, his work assignments are virtually entirely legal in nature.

9. Plaintiff's work assignments are grossly inconsistent with the work assignments envisioned under Plaintiff's official Agency Position Description.

10. Plaintiff has met with stiff resistance from the Agency in his attempts to have his Position Description (and thereby, his position classification) revised to match his work assignments, or to have his work assignments revised to be consistent with his Position Description.

11. Plaintiff has repeatedly received performance appraisals on work assignments that are inconsistent with his Position Description and his position classification. Such evaluations and appraisals have been improper and unfairly low. The Agency's refusal to comply with the law governing position classification and assignment of work is the result of the Defendant Agency's unlawful discrimination and reprisal for Plaintiff's resort to the Equal Employment Opportunity process.

12. On July 30, 2003, Plaintiff applied for the agency's student loan repayment program, which he submitted to his second-line supervisor, Frank J. Donaty, Jr. In a memorandum dated July 31, 2003, Donaty informed Plaintiff that he, Donaty, declined to recommend Plaintiff for the program.

13.    One criteria for acceptance into the student loan repayment program is the employee's possession of unusually high or unique qualifications contributing to the agency's mission to protect investors and maintain the integrity of the securities markets.

14.    Plaintiff possessed such qualifications, which far exceeded that possessed by most employees in his work unit, and clearly exceeded that possessed by the one selectee in Plaintiff's immediate office, Kevin Rupert.

15.    Koch had met the other criteria, including the providing of high or unique quality of service to internal and external customers, leadership and teamwork.

16.    The failure of Donaty to recommend Plaintiff for the program is purely the result of discrimination and retaliation by Donaty and, perhaps, other management officials.

17.    The student loan repayment program, as implemented, moreover, benefits mostly younger employees, thus resulting in a disproportionate and adverse discriminatory impact based on age.

31.    The Plaintiff has exhausted the administrative process available in the Securities and Exchange Commission and the Equal Employment Opportunity Commission. The Securities and Exchange Commission, however, failed to properly and completely investigate Plaintiff's administrative complaint. After Koch withdrew his request for a hearing before an EEOC hearing examiner, who engaged in an unworkable discovery schedule, the Securities and Exchange Commission issued a decision on January 6, 2006. Koch received the decision some days later.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Randolph S. Koch demands trial by jury in this action of all issues triable by jury in this matter.

4

WHEREFORE:

The Plaintiff, Randolph S. Koch, respectfully asks the Court:

1.) to enter a permanent injunction against the Securities and Exchange Commission, it supervisors, employees and agents, ordering them to cease and desist from engaging in the discriminatory and retaliatory practices described above;

2.) to order such affirmative relief as is appropriate, including damages in the amount of Koch's total student loan payment obligation at the time of the denial by Donaty of Koch's participation in the program,

3.) such other monetary damages as may be appropriate for other pecuniary losses resulting from the agency's refusal to enter Koch into the program, and

4.) to order whatever other equitable relief the Court deems appropriate.

Respectfully submitted,

4/10/06
Date

_(signature)_
RANDOLPH S. KOCH
4511 Avondale Street, Apt. 204
Bethesda, MD 20814
(301) 656-0645

5



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF
EQUAL EMPLOYMENT
OPPORTUNITY

January 6, 2005

**Federal Express**

Randolph S. Koch
4511 Avondale Street, Apt. 204
Bethesda, MD 20824

　　　　Re: Final Agency Decision for Complaint No. SEC 18-03-04

Dear Mr. Koch:

　　In accordance with 29 C.F.R. §1614, this letter is to notify you that the U.S. Securities and Exchange Commission (SEC) has issued a final agency decision on the complaint of discrimination filed by you on October 10, 2003, Complaint No. SEC 18-03-04. Enclosed is a copy of the final decision.

**Right to Appeal the Final Agency Decision**

　　If Complainant is dissatisfied with the SEC's final decision, complainant may file a notice of appeal with the EEOC within 30 days of complainant's receipt of the final decision, or if represented by an attorney, within 30 days of the attorney's receipt of the final decision. Filing with the EEOC may be done by mail, personal delivery or by facsimile and should indicate the claims you seek to appeal. The appeal must be filed using EEOC Form 573, a copy of which is enclosed. Complainant may attach a statement along with any other documents in support of the appeal, or may submit such statement and documents within 30 days of filing your appeal. The original of the appeal and any statement and documents in support should be filed with the EEOC in one of the following ways:

　　(1) By Mail addressed to:

　　　　　　Director, Office of Federal Operations
　　　　　　U.S. Equal Employment Opportunity Commission
　　　　　　P.O. Box 19848
　　　　　　Washington, D.C. 20036

(2) By Hand-Delivery addressed to:

>Director, Office of Federal Operations
>U.S. Equal Employment Opportunity Commission
>1801 L Street, N.W., 5th Floor
>Washington, D.C. 20507

(3) By Facsimile sent to: (202) 663-7022

At the same time Complainant files the notice of appeal with the EEOC, Complainant must furnish a copy of the appeal and any statement or documents in support of the appeal to the SEC EEO Director at the following address:

>Deborah K. Balducchi, Director
>Office of Equal Employment Opportunity, MS 2-12
>U.S. Securities and Exchange Commission
>100 F Street, NE
>Washington, D.C. 20549-0212

Complainant must certify, in or attached to the notice of appeal to the EEOC, the date and method by which he served the SEC EEO Director. Failure to include certification of proof of service of the statement and supporting documents, or failure to provide such documents within 30 days following the date Complainant files the appeal, may result in the materials not being considered in the appellate review. Moreover, failure to file within the time limits discussed above may result in the EEOC's dismissal of the appeal as untimely. See 29 C.F.R. §1614.403(c).

**Right To File A Civil Action**

In addition to Complainant's right to appeal to the EEOC, he also has a right to file a civil action in an appropriate U.S. District Court under the following circumstances:

-- 180 days after the date Complainant filed the formal complaint with the SEC's EEO Office, or any time thereafter,

-- within 90 days of receipt of the SEC's final decision,

-- within 90 days of receipt of the EEOC's final decision on appeal, or

-- 180 days after the date Complainant filed an appeal with the EEOC, if there has been no final decision by the EEOC, or any time thereafter.

In complainant's civil action, complainant must name Christopher Cox, Chairman of the U.S. Securities and Exchange Commission, as the defendant. Failure

to provide the name and official title of the SEC's official agency head may result in dismissal of complainant's case.

If complainant files a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, or under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§501, 504, and complainant does not have, or cannot afford the services of an attorney, Complainant may request that the Court appoint an attorney to represent complainant and that the Court permit complainant to file the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date you receive the final action order or final decision from the SEC or EEOC.

If you have any questions concerning this letter or the final agency decision please contact the EEO Office at (202) 551-6040.

Sincerely,

*Deborah K. Balducchi*

Deborah K. Balducchi
Director, Office of EEO

Enclosures: Final Agency Decision
EEOC Form 573 (Notice of Appeal/Petition)

cc:   Randolph Koch
      P.O. Box 30008
      Bethesda, MD 20824
      (with attachments)

      Paul Brockmeyer
      Office of General Counsel

3

# Final Agency Decision

# In the Matter of

# Koch v. U.S. Securities and Exchange Commission

# SEC Complaint No. SEC 18-03-04

## INTRODUCTION

On October 10, 2003, Randolph S. Koch ("Complainant") filed a complaint of employment discrimination against the United States Securities and Exchange Commission ("SEC"), pursuant to Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e-16a, the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. 621, et. seq., and the Rehabilitation Act of 1973, as amended ("Rehabilitation Act"), 29 U.S.C. 701-96i. Exhibit ("Ex.") A.

Complainant alleged he was discriminated against on the bases of his religion (Jewish), disability (physical), age, and in reprisal for prior protected EEO activity when his second-line supervisor, Frank Donaty, by memorandum dated July 31, 2003, declined to recommend him for the SEC's Student Loan Repayment Program ("Program").

On October 28, 2003, the EEO Office issued a Notice of Acceptance, informing Complainant that it had accepted the following issue for investigation:

> Whether the SEC discriminated against Complainant on the bases of his religion (Jewish), disability (physical), age, and in reprisal for prior EEO activity when Complainant's supervisor, Frank Donaty, by memorandum dated July 31, 2003, declined to recommend him for the Student Loan Repayment Program. [1]

---

[1] On March 24, 2004, Complainant sought to amend his complaint to include challenges to his 1993-2003 performance appraisals. Ex. A-1. The SEC's EEO Office determined that those allegations were not like or related to the subject complaint and therefore would not be considered in the course of this investigation.

Ex. C-3, pp. 1

The EEO Office thoroughly investigated the complaint and issued a Report of Investigation (ROI) on April 7, 2004, which is incorporated herein by reference. Complainant thereafter requested a hearing before an Equal Employment Opportunity Commission Administrative Judge. Pursuant to a request by Complainant that his hearing request be withdrawn, on November 9, 2005, Administrative Judge Kathryn Brown, dismissed this case and ordered the SEC to issue a final decision within 60 days.[2] Accordingly, a Final Agency Decision is now appropriate.

## SUMMARY OF DECISION

The evidence does not support a finding of discrimination based on Complainant's religion, disability, age or reprisal for prior EEO activity when Complainant's supervisor, Frank Donaty declined to recommend him for the Student Loan Repayment Program. Assuming arguendo that Complainant presented a prima facie case of discrimination, the SEC rebutted the prima facie case by showing, by a preponderance of the evidence, that Complainant's supervisor had legitimate, non-discriminatory reasons for his decision. Complainant did not show that the SEC's stated reasons were a pretext for discrimination.

## STATEMENT OF FACTS

### I. Background

On December 15, 1991, Complainant began his employment as a grade 12 Financial Analyst with the SEC's Division of Investment Management, Office of Disclosure and Review. Ex. F3. He has remained in the same position and grade

---

Ex. C-4.

[2] Pursuant to the same Order, Judge Brown also dismissed SEC Complaint No .01-01, and ordered the SEC to issue a final decision. The EEO Office issued a final decision in Complaint No. 01-01 on 12/08/05. See

2

throughout his employment with the SEC. Ex. F-9. At the time of the investigation, Branch Chief Richard Pfordte was Complainant's first line supervisor and Assistant Director Frank Donaty was Complainant's second-line supervisor. Exs. F-8 at 12, 20; F-9. Donaty was Complainant's first-line supervisor until October 1998. Ex. F-2B.

Complainant described himself as a Jewish male, born May 17, 1947, with cardiovascular disease (hypertension, lipid disorder and history of myocardial infarction) and obstructive sleep apnea. Ex. F-1 at 5-9. Prior to filing this complaint, Complainant had filed at least 10 other formal EEO complaints with the SEC, beginning in 1994.

### III. Student Loan Repayment Program

The Collective Bargaining Agreement between the SEC and the National Treasury Employee Union ("CBA"), Article 25, Section 1, mandates the creation of a Student Loan Repayment Program (in accordance with 5 CFR Section 537) "to attract or retain highly qualified professional, technical, and administrative individuals[.]" Ex. F-5.

Under the CBA, eligible participants must satisfy one or more of the following criterion:

-Contribution to the Agency's Mission - unusually high or unique qualifications contributing to the Agency's mission to protect investors and maintain the integrity of the securities markets;

-Customer Service - providing unusually high or unique quality of service to internal and external customers;

-Leadership - unusually high or unique influence or guidance of others in achieving or surpassing the Agency's goals; or

-Teamwork - unusually high or unique efforts to advance team goals towards the Agency's mission, supporting the team and individual team members or supporting organization units.

Ex. at F-5 (sections 2 and 4). Additionally, candidates must: (i) complete a year of SEC service, (ii) at an acceptable level of performance and (iii) commit to remain with the SEC for an additional specified period of time or reimburse the SEC. Ex. F-5. (section 5).

At the time of the investigation, an employee could nominate himself / herself for the Program (by submitting an application to the supervisor) or the employee's supervisor could do so. Either way, the supervisor must certify that the employee is deemed to have high or unique qualifications, meets a special need within the agency, is considered likely to leave the federal government if such benefits are not received, and retention of the employee is deemed essential. Ex. F-2 at 11. The paperwork was ultimately forwarded to the Office of Administrative and Personnel Management ("OAPM") to determine who participates and how much money they were loaned.[3] Exs. F-2 at 5-6; F-7. Only the names of those employees who have secured their supervisors' recommendation are forwarded to OAPM. Ex. F-2B.

On July 30, 2003, Complainant nominated himself for the Program and submitted his application to Donaty for completion. Exs. F-1 at 6; F-2 at 6-7; F-6. In a memorandum dated July 31, 2003, Donaty advised Complainant that he was not recommending Complainant to OAPM for participation in the Program. Only one other employee in the office, Kevin Rupert, a grade 14 accountant in Pfordte's branch, who reviews many of the same filings as Complainant, applied for the Program.[4] Donaty and

---

[3] OAPM has been reorganized and is now called the Office of Human Resources.
[4] Complainant thought more than 100 people were approved for the Program and that he met the standards but said he could not be more specific because Donaty was vague. Ex. F-1 at 12-14.

4

Pfordte concurred in recommending Rupert's application to OAPM for participation in the Program. Rupert was subsequently accepted into the Program.

## COMPLAINANT'S ALLEGATIONS

Complainant said that he met all of the prerequisites for Program participation, but Donaty denied his request for discriminatory reasons. Ex. F-1 at 13-17. Complainant said that Donaty's denial was at least in part because Complainant is Jewish, as evidenced by Donaty's past actions, "all of which are just too extensive to discuss in this [testimony] session," and the fact that Complainant is one of only two Jewish people in the Office. Ex. F-1 at 7.

As for age, Complainant said that the SEC was not used to a 56 year old person requesting to participate in the Program. Complainant testified that he could not elaborate on his allegation that Donaty's decision was based on age, because he did not have data on who was approved for the program and who was denied. Ex. F-1 at 8.

Complainant further stated that Donaty's discriminatory action is part of a long-term pattern of disability-based discrimination and too "voluminous to discuss" fully. When asked to explain how he thought his physical impairments accounted for his exclusion from Program, Complainant said that any "performance problems" on which Donaty relied in denying his loan request stemmed from Complainant's "medical problems" and were thus discriminatory (citing both disparate treatment and failure to accommodate). Ex. F-1 at 8-12.[5]

Complainant testified that performance ratings are highly subjective and people

---

[5] Failure to accommodate was not an issue in this Complaint. It should be noted that accommodation issues were raised in Complainant's prior EEO complaints.

5

who participate in the EEO process receive lower evaluations. He also stated that he could not comment meaningfully without seeing the performance ratings and work product for the people who were approved for the Program. Ex. F-1 at 18-19. Complainant, while challenging the validity of his appraisals, did not think they justified his exclusion from the Program, noting that in the last couple of years he received "at least Satisfactory."[6] Ex. F-1 at 12, 20.

## MANAGEMENT'S RESPONSE

Donaty stated that Donaty declined to recommend Complainant for participation in the Program because he could not certify that Complainant was an employee with unique qualifications, met a special agency need or was likely to leave the agency if he did not participate in the Program. Moreover, Donaty could not certify that Complainant's retention was essential. Exs. F-2 at 11-12; F-7. Donaty said he primarily based his decision on Complainant's performance from 1998-2002, during which time Complainant received four Fully Successful ("FS") ratings and one Unsatisfactory rating.[7] Donaty further noted that Complainant never received a rating higher than FS in the previous ten years. Complainant received "FS" in 1995-1999, 2001 and 2002. Complainant received "Unsatisfactory" in 2000, "Minimally Successful" in 1994 and "Exceeds Fully Successful in 1993. Exs. F-2A; F-2 at 10; F-4.

Exs. F-2A; F-4. Donaty said that even the FS ratings noted Complainant's failure to meet certain time requirements. Exs. F-2 at 8, 10-11; F-4.

---

[6] Complainant's evaluations are not at issue in this investigation. Ex. C-4.
[7] The highest possible rating one could obtain was "Outstanding," followed by "Exceeds Fully Successful," "Fully Successful," "Minimally Successful" and "Unsatisfactory." . Donaty was Complainant's rating official through 1998. Pfordte took over as Rating Official in 1999; Donaty became the Reviewing Official.

6

Donaty testified that:

> I just didn't see where he was an individual for whom this program was designed.
>
> * * *
>
> I would not consider Mr. Koch to be an employee with high or unique qualifications. I don't believe he meets a special need within the agency. I don't believe he has any thoughts about leaving the government if he doesn't get participation in the program, and his retention is not essential.

Ex. F-2 at 11-12.

Donaty stated that he and Pfordte recommended Kevin Rupert for the Program and forwarded Rupert's application to OAPM along with a detailed justification memorandum. Exs. F-2 at 12-13; F-8. The memorandum described Rupert as an experienced Senior Accountant (CPA / MBA) and "exemplary" employee who consistently received "outstanding" ratings throughout his tenure at the SEC (which began in 1992). Ex. F-8. The memorandum further described Rupert as "an important part of this office" whose "departure would have a significant impact on our accounting and disclosure review program, a critical part of the SEC's mission," as further evidenced by his brief departure in 1999. Id. Additionally, it noted that Rupert "gladly assumes the non-supervisory, ministerial duties of branch chief," assists in training other staff, many of whom solicit his advice on complex issues. Id.

Donaty testified that Rupert is an "outstanding employee" who "does excellent work," is "well thought of in the division when it comes to consideration of complex and novel accounting matters, as well as disclosure issues." Donaty further stated that "[p]eople come to Mr. Rupert for his advice." Donaty described Rupert as someone with "high" or "one might say unique" qualifications who fills a "special need" for CPAs,

---

Exs. F-4; F-10.

particularly given his expertise regarding the Sarbanes-Oxley Act of 2002. Donaty said there was a "good possibility" that Rupert might leave the SEC "given his educational background and his experience," noting that he would be a "valuable addition" to an accounting firm, a law firm or mutual fund complex where he could "at least double his current salary." Donaty believed Rupert's retention was "essential," given his experience and unique skills. Exs. F-2 at 12-16; F-8. [8]

Donaty said that he did not consider Complainant's religion, age, disability or past EEO activity when he denied Complainant's request to participate in the Program. Donaty said that Complainant " misinterprets and mischaracterizes a lot of things." Ex. F-2 at 16. Donaty said he thought that he was older than Complainant. Id. at 14-16. Donaty said he was a witness in prior complaints filed by Complainant during the last three years. Ex. F-2 at 4. Donaty said he was aware that Complainant alleged that he had physical disabilities because Complainant twice requested accommodations for disabilities, once between 1993 and 1995 based on heart problems and once within the last two to three years based on sleep apnea. Donaty said that, to the best of his knowledge, the first request was denied because Complainant failed to provide the requisite medical documentation. In response to the second request, Complainant was allowed to adjust his hours to work from 10:30 a.m. - 7:00 p.m. Donaty was not otherwise aware of any physical disabilities. Ex. F-2 at 17-18.

Donaty said that Rupert has one of the same conditions from which Complainant

---

[8] Complainant never responded to Donaty's description of Rupert's superior performance, though given the opportunity to do so in rebuttal. Ex. F-1A.

8

allegedly suffers. He guessed Rupert was somewhere between forty-five and fifty.[9] He was unaware of Rupert's religion or whether he had been involved in prior EEO activity. Ex. F-2 at 14.

## LEGAL STANDARDS

Complainant alleged discrimination based on his religion, age, disability and in reprisal for prior EEO activity.

**I.      The Statutes**

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for the federal government to discriminate against an employee because of his religion. 42 U.S.C. § 2000e-16(a). The Age Discrimination in Employment Act (ADEA) prohibits discrimination of federal employees who are over age 40 because of their age. 29 U.S.C. § 621, et seq. The Rehabilitation Act prohibits the federal government from discriminating against a qualified employee with a disability, and mandates that the federal government reasonably accommodate such an employee's known disabilities absent undue hardship. 29 U.S.C. § 791, et seq.; see also 29 C.F.R. § 1614.203(b). The federal government may not retaliate against an employee for exercising his EEO rights under Title VII, the Rehabilitation Act, or the ADEA. 42 U.S.C. § 2000e-3(a), 2000e-16; 29 U.S.C. 794a(a)(1); 29 C.F.R. § 1614.101(b), 1614.103(a).

**II.     Evidentiary Scheme**

In proceedings involving allegations of discrimination, it is the complainant's burden to initially establish that there is some substance to his or her allegation. To do this, the complainant must establish a prima facie case of discrimination. McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802 (1973); see also Furnco Construction Corp. v. Waters, 438 U.S. 567, 576 (1978). "This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur." Davis v. Department of Agriculture, EEOC Appeal No. 01A06003 (February 25, 2003). The burden "then shifts to the agency to articulate a legitimate, non-discriminatory explanation for its actions." Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248-257 (1981)). To meet this burden, the agency "need only produce evidence sufficient 'to allow the trier of fact rationally to conclude' that the agency's action was not based on unlawful discrimination." Id. The burden then shifts back to the complainant to the complainant to demonstrate, by a preponderance of the evidence, that the agency's articulated reason was not its true reason, but a mere pretext for discrimination. Burdine, 450 U.S. at 253; see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 508 (1993).

### III.  Prima Facie Case and Legitimate Non-Discriminatory Reasons

The EEOC has ruled that the prima facie inquiry may be dispensed with when the agency has articulated legitimate and non-discriminatory reasons for its conduct. See, e.g, Walker v. United States Postal Service, EEOC Appeal No. 01A31117 (December 1, 2003). See also United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Department of Veterans Affairs, EEOC Request No. 05950842 (November 13, 1997).

## APPLICATION OF LEGAL STANDARD TO COMPLAINANT'S CLAIM

Assuming arguendo that Complainant has established a prima facie case for discrimination based on religion, disability, age and/or reprisal for prior EEO activity, the SEC rebuts Complainant's prima facie case by articulating legitimate, nondiscriminatory reasons justifying its decision to decline recommending Complainant for the Student Loan Repayment Program. While Complainant may not agree with these reasons, there is sufficient evidence to conclude that Complainant was not recommended for the Program because management felt he is not an employee deemed to have unique qualifications, does not meet a special agency need, is not likely to leave the agency if he doesn't participate in the program and his retention with the agency is not essential, as demonstrated by Complainant's performance appraisals in the past ten years.

## PRETEXT

Neither the Complainant nor the investigation disclosed any evidence to suggest that the SEC's stated reasons for its action were a pretext for discrimination.

## DECISION

Based on a complete examination of the record, we conclude that there was insufficient evidence to prove that the Agency's articulated reasons for declining to recommend Complainant for the Student Loan Repayment Program was based on religion, disability, age or reprisal for prior EEO activity. See Malco v. Department of State, EEOC No. 01A12426 (July 5, 2002).

*Deborah K. Balducchi* (signature)  1/5/06

Deborah K. Balducchi                   Date
Director, EEO Office