UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RANDOLPH S. KOCH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-0656 PLF |
| | ) | |
| CHRISTOPHER COX, | ) | |
| CHAIRMAN, | ) | |
| U.S. SECURITIES AND | ) | |
| EXCHANGE COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS
## AND FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, Defendant Christopher Cox, Chairman of the United States Securities and Exchange Commission ("SEC"), moves this Court for an order dismissing plaintiff's claims in paragraphs 6 through 11 of the Complaint as duplicative of claims raised in prior, pending litigation, and granting summary judgment in favor of defendant with regard to plaintiff's remaining claims, found in paragraphs 12 through 31 [sic] of the Complaint.

Plaintiff *pro se* filed suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, Sections 501 and 505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a. Paragraphs 6 through 11 of the Complaint, which assert that plaintiff's work assignments as

a grade 12 Financial Analyst are inconsistent with his formal position description, are identical to paragraphs 6 through 11 (including the same typographical errors) in <u>Koch</u> v. <u>Pitt</u>, Civil Action No. 02-1492 (PLF), which is currently pending before this Court. Accordingly these same claims raised again in the current Complaint should be dismissed.

Plaintiff's remaining claims (Complaint, paragraphs 12 through 31 [sic]) assert that the SEC discriminated and retaliated against plaintiff by failing to recommend him for inclusion in the SEC's Student Loan Repayment Program. Because there is no genuine issue of disputed material fact with regard to this portion of the Complaint, and defendant's reasons for not selecting plaintiff were not discriminatory or retaliatory, summary judgment for defendant is appropriate.

WHEREFORE, Defendant Christopher Cox, Chairman of the SEC, respectfully requests that this Court dismiss paragraphs 6 through 11 of plaintiff's Complaint and enter summary judgment in favor of defendant on the remaining paragraphs of the Complaint (paragraphs 12 through 31 [sic][1]).[2]

---

[1] Plaintiff's Complaint identifies paragraph 18 as paragraph 31.

[2] Plaintiff should take notice that any factual assertions contained in the affidavit and other attachments in support of this motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the attachments. <u>See</u> <u>Neal v. Kelly</u>, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 108 and Fed. R. Civ. P. 56(e), which provides as follows:

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

OF COUNSEL:

_____

    Supporting and opposing affidavits shall be made on
personal knowledge, shall set forth such facts as would
be admissible in evidence, and shall show affirmatively
that the affiant is competent to testify to the matters
stated therein.  Sworn or certified copies of all
papers or parts thereof referred to in an affidavit
shall be attached thereto or served therewith.  The
court may permit affidavits to be supplemented or
opposed by depositions, answers to interrogatories, or
further affidavits.  When a motion for summary judgment
is made and supported as provided in this rule, an
adverse party may not rest upon the mere allegations or
denials of the adverse party's pleading, but the
adverse party's response, by affidavits or as otherwise
provided in this rule, must set forth specific facts
showing that there is a genuine issue for trial.  If
the adverse party does not so respond, summary
judgment, if appropriate, shall be entered against the
adverse party.

Fed. R. Civ. P. 56(e).

Paul R. Brockmeyer
Senior Counsel
United States Securities and Exchange Commission
Office of the General Counsel
100 F Street, N.E.
Washington, DC 29549-9612

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RANDOLPH S. KOCH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-0656 PLF |
| | ) | |
| CHRISTOPHER COX, | ) | |
| CHAIRMAN, | ) | |
| U.S. SECURITIES AND | ) | |
| EXCHANGE COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7.1(h), defendant hereby submits his statement of material facts as to which there is no genuine issue:

**I.    Background**

1.    Plaintiff is a grade 12 Financial Analyst with the Securities and Exchange Commission's ("SEC") Division of Investment Management, Office of Disclosure and Review.  See Declaration of Frank John Donaty, Jr., at ¶ 1, attached as Exh. A; Complaint, ¶ 9.[1]

2.    Plaintiff is a Jewish white male, born in 1947 (age 59), who claims to have a history of cardiovascular disease and obstructive sleep apnea.   Complaint, ¶ 6; EEO Testimony of

---

[1]  Plaintiff's Complaint has two paragraphs labeled "9"; this citation refers to the first one.

Plaintiff at pp. 5-9, attached as Exh. B.

3.  On July 26, 2002, plaintiff filed <u>Koch v. Pitt</u>, Civil No. 02-1492 (D.D.C.) (PLF), which raises the same claims plaintiff has raised in the Complaint in the instant case in paragraphs 6-11.  <u>Compare</u> Exh. 1 at ¶¶ 6-11 <u>with</u> Complaint in the instant case, ¶¶ 6-11.

**II.  Student Loan Repayment Program**

4.  On July 30, 2003, plaintiff nominated himself for the Student Loan Repayment Program ("Repayment Program") and submitted his application to his supervisor, Frank Donaty, for completion.  Exh. A at ¶ 4; Exh. C at pp. 6-7.

5.  The SEC's Repayment Program was created "to attract or retain highly qualified professional, technical, and administrative individuals by assisting them in repaying their outstanding federally insured student loans."  Exh. A at ¶ 2.

6.  Under the Repayment Program, eligible participants in the Program must satisfy one or more of the following criteria:

- Contribution to the Agency's Mission - unusually high or unique qualifications contributing to the Agency's mission to protect investors and maintain the integrity of the securities markets;

- Customer Service - providing unusually high or unique quality of service to internal and external customers;

- Leadership - unusually high or unique influence or guidance of others in achieving or surpassing the Agency's goals; or

- Teamwork - unusually high or unique efforts to advance team goals towards the Agency's mission, supporting the

2

team and individual team members or supporting
organization units.

Exh. A at ¶ 3.

7.    An employee may nominate himself for the Repayment
Program (by submitting an application to his or her supervisor)
or the employee's supervisor may do so.  See EEO Testimony of
Frank Donaty pp. 5-6, 11, attached as Exh. C.  Either way, the
supervisor must certify that the employee: (1) is deemed to have
high or unique qualifications that meet a special need within the
agency; (2) is considered likely to leave the federal government
if such benefits are not received; and (3) retention of the
employee is deemed essential.  Id.

8.    Mr. Donaty declined to recommend plaintiff for
participation in the Repayment Program because Mr. Donaty
concluded that he could not certify that plaintiff was an
employee with unique qualifications that met a special agency
need, or was likely to leave the SEC if he did not participate in
the Program.  Moreover, Mr. Donaty could not certify that
plaintiff's retention at the SEC was essential.  Exh. C at pp. 8-
12; Exh. A at ¶ 5.

9.    Mr. Donaty based his decision on plaintiff's
performance evaluations from 1998-2002, during which time
plaintiff received four "Fully Successful" ("FS") ratings and one
"Unsatisfactory" rating.  Exh. C at pp. 10-12.  In addition,
plaintiff had never received a rating higher than FS during the

3

previous ten years and had received one "Minimally Successful" rating.  Id.

10.  The highest possible rating an employee could obtain during this period was "Outstanding," followed by "Exceeds Fully Successful," "Fully Successful," "Minimally Successful" and "Unsatisfactory."  Exh. A at ¶ 6.

11.  Even on occasions in which plaintiff received an FS rating, his performance evaluations discussed problems with his performance.  Exh. C at p. 11; Exh. A at ¶ 7.

12.  Mr. Donaty did not consider plaintiff's religion, age, alleged disability or past EEO activity when he denied plaintiff's request to participate in the Program.  Exh. A at ¶ 12; Exh. C at p. 16.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530
(202) 514-7226

4

OF COUNSEL:

Paul R. Brockmeyer
Senior Counsel
United States Securities and Exchange Commission
Office of the General Counsel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
RANDOLPH S. KOCH,             )
                              )
          Plaintiff,          )
                              )
          v.                  )   Civil No. 06-0656 PLF
                              )
CHRISTOPHER COX,              )
   CHAIRMAN,                  )
   U.S. SECURITIES AND        )
   EXCHANGE COMMISSION,       )
                              )
          Defendant.          )
_____)
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

**Preliminary Statement**

Plaintiff filed suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), Sections 501 and 505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794 ("the Rehabilitation Act"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a ("ADEA"). Plaintiff alleges that he was discriminated and retaliated against in connection with certain work assignments and the denial of his request to be included in a Student Loan Repayment Program ("Repayment Program").

Defendant Christopher Cox, Chairman, United States Securities and Exchange Commission ("SEC"), moves to dismiss paragraphs 6 through 11 of the Complaint filed by plaintiff pursuant to Fed. R. Civ. P. 12(b)(6). The factual allegations in these paragraphs of the Complaint are virtually identical to the

allegations in paragraphs 6 through 11 in <u>Koch</u> v. <u>Pitt</u>, Civil No. 02-1492 (D.D.C.)(PLF) ("<u>Koch 1</u>"), and therefore should be dismissed.

In addition, defendant moves this Court to grant summary judgment with regard to the remaining portions of plaintiff's Complaint (paragraphs 12 through 31 [sic][1]), concerning the SEC's decision not to include plaintiff in the SEC's Repayment Program. The undisputed evidence shows that plaintiff failed to meet the criteria established for that program. Accordingly, plaintiff cannot establish a <u>prima facie</u> case of discrimination, because he cannot show he was qualified for inclusion in the program.

Plaintiff also cannot establish a <u>prima facie</u> case of age or disability discrimination, because the only employee within his Division selected for the Program was not significantly younger than plaintiff and suffers from a condition similar to that of plaintiff's alleged disability.

Nonetheless, even if plaintiff could demonstrate a <u>prima facie</u> case under Title VII, the Rehabilitation Act, and/or the ADEA, the SEC had a legitimate, non-discriminatory reason for not recommending plaintiff for inclusion in the Repayment Program. Plaintiff failed to meet the criteria established for the program. Such a decision was comfortably within the SEC's

---

[1] Plaintiff's Complaint identifies paragraph 18 as paragraph 31.

prerogative to manage its employment affairs, and plaintiff cannot show any evidence of pretext.

Accordingly, for the reasons set forth in this memorandum and accompanying exhibits, defendant respectfully submits that he is entitled to summary judgment on plaintiff's claims concerning the SEC's Repayment Program.

## BACKGROUND

On July 26, 2002, plaintiff Randolph Koch filed a lawsuit in this Court against then-defendant Harvey Pitt, former Chairman of the SEC, which was assigned docket number 02-1492 [Koch 1].  That lawsuit alleges violations of Title VII, the Rehabilitation Act and the ADEA in connection with plaintiff's employment as a GS-12 Financial Analyst at the SEC.  The Complaint in Koch 1 specifically raises claims concerning plaintiff's work assignments.  See Complaint in Koch 1, ¶¶ 6-11, attached.

On April 10, 2006, plaintiff filed the instant case. This lawsuit also alleges violations of Title VII, the Rehabilitation Act, and the ADEA, in connection with plaintiff's employment as a Financial Analyst at the SEC.  The Complaint in this case raises the same work assignment claims as are raised in Koch 1.  Compare Exh. 1 with Complaint in this case, ¶¶ 6-11.

Plaintiff thus has certain identical claims presented in two lawsuits -- Koch 1 and the instant suit.  Plaintiff's only purported new claims in the instant case involve his July 2003

application for the SEC's Repayment Program, the facts of which
are discussed <u>infra</u> at 16-20.

**ARGUMENT**

## I.    PLAINTIFF'S CLAIMS IN PARAGRAPHS 6-11 SHOULD BE DISMISSED TO PREVENT DUPLICATIVE LITIGATION.

It is a well-settled principle of American jurisprudence
that a party may not split his claims into separate lawsuits:

> It is undoubtedly a settled question that a party
> seeking to enforce a claim legal or equitable must
> present to the court, either by the pleadings or
> proofs, all the grounds upon which he expects a
> judgment in his favor.  He is not at liberty to split
> up his demand and prosecute it by piecemeal, or present
> only a portion of the grounds upon which special relief
> is sought, and leave the rest to be presented in a
> second suit, if the first fail.  There would be no end
> to litigation if such a practice were permissible.

<u>United States v. The Haitian Republic</u>, 154 U.S. 118, 125 (1894).

Thus, "in accordance with public policy, partially to
conserve the courts' time but probably in the main to prevent the
hardship upon defendant of unnecessary piecemeal litigation, a
single cause of action cannot be split so as to be properly made
the subject of different actions; and if separate suits are
instituted and pending for various parts of a single cause of
action, the pendency of the first may be pleaded in abatement of
the others." 1B James W. Moore et al., <u>Moore's Federal Practice</u>
¶ 0.410[2], at 366 (2d ed. 1992).  "There is no reason why a
court should be bothered or a litigant harassed with duplicating
lawsuits on the same docket; it is enough if one complete

4

adjudication of the controversy be had." Sutcliffe Storage & Warehouse Co. v. United States, 162 F.2d 849, 851 (1st Cir. 1947). Accord Oxbow Energy Inc. v. Koch Industries, 686 F. Supp. 278, 281 (D. Kan. 1988) (quoting Sutcliffe). Moreover, a plaintiff should not be allowed to circumvent substantive and procedural rules by the tactic of filing separate, duplicative lawsuits. Walton v. Eaton Corp., 563 F.2d 66, 71 (3d Cir. 1977) (en banc) (plaintiff should not be able to circumvent rules pertaining to amendment of pleadings and demand for trial by jury); Sutcliffe, 162 F.2d at 852 (plaintiff cannot avoid Court of Claims jurisdiction by splitting claims into separate lawsuits). Thus, the law forbids a plaintiff "from splitting a single claim for relief against defendants by making it the subject of more than one action in the same court." Walton v. UTV of San Francisco, 776 F. Supp. 1399, 1401 (N.D. Cal. 1991) (Title VII context) (citing Bienville Water Supply Co. v. Mobile, 186 U.S. 212, 216-17 (1902) (suggesting that law will not "permit the splitting up into separate suits of different grounds for the same relief")). A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Oliney v. Gardner, 771 F.2d 856, 859 (5th Cir. 1985); Zerilli v. Evening News Ass'n, 628 F.2d 217, 222 (D.C. Cir. 1980); Walton v. Eaton Corp., 563 F.2d at 70. Accord Finch v. Hughes, 926 F.2d 1574,

1577 (Fed. Cir. 1991) (citing <u>Washington Metro. Area Transit</u>
<u>Auth. v. Ragonese</u>, 617 F.2d 828, 830 (D.C. Cir. 1980)); <u>State of</u>
<u>Washington v. Udall</u>, 417 F.2d 1310, 1321 (9th Cir. 1969);
<u>Hillgrove v. Wright Aeronautical Corp.</u>, 146 F.2d 621, 623 (6th
Cir. 1945).

This "doctrine against splitting claims" is "only one
application of the general doctrine of res judicata." <u>Sutcliffe</u>
<u>Storage</u>, 162 F.2d at 851.  If the second lawsuit would be barred
by a prior adjudication in the first suit, then it should be
dismissed even while both are still pending simultaneously:

> As a matter of fact, it is often an advantage to the
> plaintiff to have the issue of double suits settled
> before he finds himself barred from full recovery by a
> partial but final judgment in one action.  Thus here
> the plaintiff may count itself in luck to have the
> matter settled before a portion of its rights is
> irretrievably lost.

<u>Id</u>. at 851 (citing <u>The Haitian Republic</u>).

The test for whether a lawsuit is barred by the pendency of
another was stated by the Supreme Court as follows:

> When the pendency of such a suit is set up to defeat
> another, the case must be the same.  There must be the
> same parties, or, at least, such as represent the same
> interest, there must be the same rights asserted and
> the same relief prayed for.  This relief must be
> founded on the same facts, and the title or essential
> basis of the relief sought must be the same.

<u>The Haitian Republic</u>, 154 U.S. at 124 (quoting <u>Watson v. Jones</u>,
80 U.S. (13 Wall.) 679, 715 (1871)).  "The identity in these
particulars should be such that if the pending case had already

been disposed of, it could be pleaded in bar as a former adjudication of the same matter between the same parties." Watson v. Jones, 80 U.S. at 715.  Accord Sutcliffe Storage, 162 F.2d at 851 ("the test as ordinarily stated is whether the claims set up are legally the same so that judgment in one is a bar to the others.").

Similarly, the Ninth Circuit has held that a controversy cannot be split into separate lawsuits where "the same factual and legal issues" pertain to all the claims.  State of Washington v. Udall, 417 F.2d at 1321 (rejecting argument that "a controversy involving separate parcels of real property creates inherently separate causes of action") (citing Sutcliffe, 162 F.2d 849).  Several other courts have stated the test as whether the suits involve "the same subject matter."  Oliney, 771 F.2d at 859; Zerilli, 628 F.2d at 222; Walton, 563 F.2d at 70.

Indeed, a complaint is considered malicious when it "duplicates allegations of another [ ]federal lawsuit by the same plaintiff."  Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993); see also Banks v. Gillie, Civ. Act. No. 03-3098, 2004 U.S. Dist. LEXIS 5413, at *9 (E.D. La. Feb. 25, 2004) (duplicative and repetitive complaints are considered malicious); McGill v. Juanita Kraft Postal Service, No. 3:03-CV-1113-K, 2003 WL 21355439, at *2 (N.D. Tex. June 6, 2003) (complaint is malicious when it "'duplicates allegations of another pending federal

7

lawsuit by the same plaintiff' or when it raises claims arising out of a common nucleus of operative facts that could have been brought in the prior litigation").

Here, there is no dispute that plaintiff has raised the identical claims in two lawsuits.  Both lawsuits have precisely the same plaintiff and defendant.[2]  Both lawsuits arise from the same subject matter -- plaintiff's employment at the SEC. (Indeed, the majority of the paragraphs of the Complaint in the instant case are exact or virtually exact duplicates of paragraphs of the Complaint in Koch 1).  Both lawsuits allege the same jurisdictional basis and are brought under the same laws, Title VII, the Rehabilitation Act, and the ADEA.  Compare Complaint in Koch 1, ¶¶ 6-11 with Complaint in the instant case, ¶¶ 6-11.  Thus, it is indisputable that the suits involve "the same subject matter," e.g., Oliney, 771 F.2d at 859, and that "the same factual and legal issues" pertain to plaintiff's claims in paragraphs 6-11 of the instant Complaint.  State of Washington v. Udall, 417 F.2d at 1321.

Since "[t]here is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket," Sutcliffe, 162 F.2d at 851, plaintiff should not be allowed to raise identical claims in two separate lawsuits.

---

[2]  Although the named defendant has changed, the defendant is the head of the SEC, sued in his official capacity.

Paragraphs 6-11 in the instant Complaint should therefore be dismissed.

### II.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE REMAINING ALLEGATIONS CONTAINED IN THE COMPLAINT.

#### A.  Factual Background

Plaintiff is a Jewish male, born in 1947 (age 59), who alleges a history of cardiovascular disease and obstructive sleep apnea.  See EEO Testimony of Plaintiff at pp. 5-9, attached as Exh. B.

Plaintiff works as a grade 12 Financial Analyst with the SEC's Division of Investment Management, Office of Disclosure and Review, which consists of approximately fifteen employees.  See Declaration of Frank John Donaty, Jr., at ¶ 1, attached as Exh. A.  Mr. Donaty was plaintiff's first-line supervisor until October 1998.  Id.  Thereafter, Branch Chief Richard Pfordte was plaintiff's first line supervisor and Assistant Director Frank Donaty was plaintiff's second-line supervisor.  Id.

The Collective Bargaining Agreement between the SEC and the National Treasury Employees Union ("CBA"), Article 25, Section I, mandates the creation of a Student Loan Repayment Program, in accordance with 5 CFR Section 537, "to attract or retain highly qualified professional, technical, and administrative individuals by assisting them in repaying their outstanding federally insured student loans."  See Exh. A at ¶ 2.

Under the CBA, eligible participants must satisfy one or

9

more of the following criteria:

- Contribution to the Agency's Mission - unusually high or unique qualifications contributing to the Agency's mission to protect investors and maintain the integrity of the securities markets;

- Customer Service - providing unusually high or unique quality of service to internal and external customers;

- Leadership - unusually high or unique influence or guidance of others in achieving or surpassing the Agency's goals; or

- Teamwork - unusually high or unique efforts to advance team goals towards the Agency's mission, supporting the team and individual team members or supporting organization units.

See Exh. A at ¶ 3.

An employee may nominate himself for the Repayment Program (by submitting an application to the supervisor) or the employee's supervisor may do so.  See EEO Testimony of Frank Donaty pp. 5-6, 11, attached as Exh. C.  Either way, the supervisor must certify that the employee: (1) is deemed to have high or unique qualifications that meet a special need within the Agency; (2) is considered likely to leave the federal government if such benefits are not received; and (3) retention of the employee is deemed essential.  Id.  The paperwork is then forwarded to the Office of Administrative and Personnel Management ("OAPM") to determine who participates and how much money will be repaid.  Id.

On July 30, 2003, plaintiff nominated himself for the Repayment Program and submitted his application to Mr. Donaty for

10

completion.  Exh. A at ¶ 4; Exh. C at pp. 6-7.  In a memorandum
dated July 31, 2003, Mr. Donaty advised plaintiff that he was not
recommending plaintiff to OAPM for participation in the Repayment
Program.  Exh. A at ¶ 4.  Mr. Donaty declined to recommend
plaintiff for participation because he could not certify that
plaintiff was an employee with unique qualifications, met a
special agency need or was likely to leave the SEC if he did not
participate in the Program.  Moreover, Mr. Donaty could not
certify that plaintiff's retention was essential.  Exh. C at pp.
8-12; Exh. A at ¶ 5.  Mr. Donaty testified that:

> I don't think he was the type of person . . . for
> whom this program is designed.
>                * * *
> I would not consider Mr. Koch to be an employee
> with high or unique qualifications.  I don't
> believe he meets a special need within the agency.
> I don't believe he has any thoughts about leaving
> the government if he doesn't get participation in
> the program, and his retention is not essential.

Exh. C at pp. 10-12.

Mr. Donaty based his decision on plaintiff's performance
evaluations from 1998-2002, during which time plaintiff received
four "Fully Successful" ("FS") ratings and one "Unsatisfactory"
rating.  Exh. C at pp. 10-12.  In addition, plaintiff had never
received a rating higher than FS during the previous ten years
and had received one "Minimally Successful" rating.  Id.  The
highest possible rating an employee could obtain during this
period was "Outstanding," followed by "Exceeds Fully Successful,"

"Fully Successful," "Minimally Successful" and "Unsatisfactory." Exh. A at ¶ 6.

Even on occasions in which plaintiff received an FS rating, his performance evaluations discussed problems with plaintiff's performance, including his repeated failure to comply with deadlines for submitting comments on new registration statements and post-effective amendments.  Exh. C at p. 11; Exh. A at ¶ 7. These reviews also observed that plaintiff needed to work on making fewer inappropriate comments and on improving his analytical skills by consulting more with other staff members and supervisors regarding staff positions and precedents.  Id.  In addition, plaintiff's annual reviews noted that he needed to keep better apprised of new developments and that he rarely worked with other members of the staff, except when instructed to do so. Id.

Mr. Donaty did not consider plaintiff's religion, age, disability or past EEO activity when he denied plaintiff's request to participate in the Repayment Program.  Exh. A at ¶ 12; Exh. C at p. 16.

Only one other employee in SEC's Division of Investment Management, Office of Disclosure and Review, "KCR" (age 51, physical disability), a grade 14 Senior Accountant in Mr. Pfordte's branch, applied for the Repayment Program.  Exh. C at p. 12; Exh. A at ¶ 8.  Mr. Donaty and Mr. Pfordte recommended KCR

12

for the Repayment Program and forwarded KCR's application to OAPM along with a detailed justification memorandum.  Exh. A at ¶¶ 9-10; Exh. C at pp. 12-13.  This memorandum described KCR as a "highly qualified member of the Division of Investment Management's staff" who "participates, leads and plays a critical role in reviewing the annual reports to shareholders, registration statements, amendments to registration statements, proxy statements and other filings of investment companies and business development companies."  Id.  The memorandum noted that KCR "is known throughout the Office for his skills in analyzing difficult fund accounting issues, and he kindly provides assistance on difficult or novel accounting issues to others in the Office and the Division."  Id.  The memorandum further described KCR as "an important part of this office" whose "departure would have a significant impact on our accounting and disclosure review program, a critical part of the SEC's mission, as further evidenced by his brief departure in 1999."  Id.  Additionally, the memorandum noted that KCR "gladly assumes the non-supervisory, ministerial duties of branch chief," and assists in training other staff, many of whom solicit his advice on complex issues.  Id.

The memorandum also noted that KCR had received an "Outstanding" rating for each rating period while employed by the SEC.  Exh. A at ¶ 11.  Mr. Donaty described KCR to be an

"outstanding employee" who "does excellent work," is "well thought of in the division when it comes to consideration of complex and novel accounting matters, as well as disclosure issues." Exh. C at pp. 12-16; Exh. A at ¶¶ 9-10.  Mr. Donaty further noted "[p]eople come to KCR for his advice."  Id.  Mr. Donaty described KCR as someone with "high" or "one might say unique" qualifications who fills a "special need" for CPAs particularly given his expertise regarding the Sarbanes-Oxley Act of 2002.  Id.  The July 30 memorandum further noted that KCR previously left the agency on one occasion and that "his experience at the SEC and unique skills as a CPA and attorney would make him a valuable addition for an accounting firm, law firm or fund complex.  If he leaves the SEC, he could reasonably expect to obtain at least double his current salary."  Id. Accordingly, Mr. Donaty believed KCR's retention was "essential," given his experience and unique skills.  Id.

B.  **Legal Argument**

1.  **Standard of Review on Summary Judgment**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  "[A]

14

complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial, and [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

In determining whether there exists a genuine issue of material fact, the trier of fact must view all facts and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Indeed, to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. Id. at 248.

Moreover, the mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Anderson, 477 U.S. at 247-48. There is no genuine issue of material fact if the relevant evidence in the record, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. Id. at 248. If the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is appropriate. Id. at 251.

15

### 2.  **Deference Due to Agency Decisions**

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases.  Though plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions.  The Court of Appeals for this Circuit has made clear that "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'"  Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)).  To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'"  Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

### 3.  **Allocation of Burdens of Production and Persuasion**

The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973), governs the analysis of plaintiff's discrimination and retaliation claims.  Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).  Under this test, the plaintiff has the initial burden of proving by a preponderance of the evidence a "prima facie" case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450

16

U.S. 248, 252-53 (1981).  If the plaintiff is able to establish a prima facie case, the burden shifts to the defendant to produce credible evidence that his or her actions were taken for a legitimate, nondiscriminatory reason.  Id.  The defendant's burden is one of production, not of proof, and is satisfied if it simply explains what it has done or produces evidence of legitimate nondiscriminatory reasons.  See St. Mary's Center v. Hicks, 509 U.S. 502, 509 (1993).

If the defendant meets this burden of production, the burden shifts back to the plaintiff to present evidence that the stated reason was pretextual.  Id.  A reason cannot be proved to be pretext unless it is shown "both that the reason was false **and** that discrimination was the real reason."  Hicks, 509 U.S. at 515 (emphasis added).  At all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination.  Id.  Moreover, a plaintiff cannot create a factual issue of pretext based merely on personal speculation of discriminatory intent.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  To avoid summary judgment on the ultimate issue, a plaintiff alleging discrimination must produce some objective evidence that the asserted reason is mere pretext and that, as a result, the defendant's actions were the product of discriminatory intent. See Phillips v. Holladay Property Services, Inc., 937 F. Supp.

17

32, 35 n.2 (D.D.C. 1996).

**4.   Plaintiff Cannot Establish A <u>Prima</u> <u>Facie</u> Case of Discrimination With Regard to His Non-Inclusion In the Student Loan Repayment Program.**

Under Title VII, the ADEA, and the Rehabilitation Act, it is unlawful to discriminate against employees on the basis of a protected classification or to retaliate against employees for engaging in protected activities.  As a general matter, to establish a <u>prima</u> <u>facie</u> case of disparate treatment discrimination under Title VII, a plaintiff must demonstrate by a preponderance of the evidence that (1) he is a member of a protected group, (2) he suffered from an adverse personnel action; and (3) the unfavorable action gives rise to an inference of discrimination.  <u>George v. Leavitt</u>, 407 F.3d 405 (D.C. Cir. 2005); <u>Brown v. Brody</u>, 199 F.3d 446, 452 (D.C. Cir. 1999). Additionally, with respect to a non-selection decision, the plaintiff must establish that he was qualified to be considered for selection.  <u>See</u> <u>Stewart v. Ashcroft</u>, 352 F.3d 422, 428 (D.C. Cir. 2003).  In analyzing an ADEA claim, courts apply the framework developed in context of Title VII.  <u>See</u> <u>Paquin v. Fed. Nat'l Mortgage Ass'n</u>, 119 F.3d 23, 26 (D.C. Cir. 1997).

To establish a <u>prima</u> <u>facie</u> case of discrimination under the Rehabilitation Act, the plaintiff must show (1) that he is a disabled person within the meaning of the Act; (2) that he is qualified to perform the essential functions of the job with or

18

without reasonable accommodation; and (3) that he has suffered an adverse employment decision because of his disability.  Dorchy v. WMATA, 45 F. Supp.2d 5, 10 (D.D.C. 1999).  For retaliation claims, the plaintiff must demonstrate that (1) he engaged in statutorily protected activity, (2) that the employer took an adverse personnel action, and (3) that a causal connection existed between the two.  Morgan v. Federal Home Loan Mortgage Corp., 329 F.3d 647, 651 (D.C. Cir. 2003); Cones v. Shalala, 199 F.3d 512, 520-21 (D.C. Cir. 2000); Brown v. Brody, 199 F.2d at 452-53.

Plaintiff cannot establish a prima facie case of discrimination under Title VII, because plaintiff cannot show that he was qualified for the Repayment Program.  Plaintiff has no evidence that he has "high or unique qualifications,' that meet "a special need" within the SEC, that he is likely to leave the SEC if not included in the Repayment Program, and that retaining him as an employee is considered essential for the SEC. See Exh. C at 6-7, 10-12; Exh. A at ¶ 5.  Absent such a showing, plaintiff was not qualified for consideration for the Repayment Program and thus his claim of non-selection fails for lack of a prima facie case.

Plaintiff also cannot establish a prima facie case of age discrimination with respect to his non-inclusion in the Repayment Program because the only employee in the Division of Investment

Management's Office of Disclosure and review who was selected for the program, "KCR", age 51, is not significantly younger than plaintiff, who is 59.  See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, (1996) (an inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger" ); see also Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 892-93 (7th Cir. 1997) (six and seven-year age difference presumptively insubstantial in the absence of evidence that the decision maker considered it significant) (and collecting cases).

Similarly, plaintiff cannot establish a prima facie case of disability discrimination with regard to his non-inclusion in the Repayment Program because a selectee within plaintiff's Division, KCR, like plaintiff also suffers from sleep apnea –– one of plaintiff's alleged disabilities.  Exh. A, ¶ 13.  Accordingly, plaintiff cannot demonstrate that he was treated differently with regard to inclusion in the Repayment Program than employees who are not included in his alleged protected classification.

**5.    Assuming Plaintiff Could Establish A Prima Facie Case of Discrimination, Legitimate Nondiscriminatory Reasons Exist for His Non-Selection to the Repayment Program.**

Assuming plaintiff could establish a prima facie case of discrimination or retaliation, defendant has articulated legitimate, non-discriminatory reasons for not selecting him for inclusion in the Repayment Program.

20

As set forth above, Mr. Donaty rejected plaintiff's July 30, 2003 application for participation in the Repayment Program because he could not make the required certification that plaintiff was an employee with unique qualifications that met a special agency need, or that he was likely to leave the agency if he did not participate in the Program. Moreover, and significantly, there is no evidence that plaintiff's retention at the SEC is essential. See supra at 10-12. Mr. Donaty based this assessment on plaintiff's performance appraisals from 1998-2002, during which time plaintiff received four "Fully Successful" ("FS") ratings and one "Unsatisfactory" rating. Id. Mr. Donaty also noted plaintiff never received a rating higher than FS in the previous ten years and had one "Minimally Successful" rating. Id.

Moreover, even on occasions in which plaintiff received an FS rating, his performance evaluations repeatedly discussed his failure to meet certain requirements. For example, on plaintiff's 1999 performance review, Mr. Donaty noted that plaintiff:

> does not manage the timeliness of the comment process
> very well. The Office's policy is to give comments on
> new registration statements and on post-effective
> amendments in 30 and 45 days, respectively. During the
> rating period, [Plaintiff] gave comments on new
> registration statements in an average of 39 days.
> Although he gave comments on post-effective amendments
> in an average of 42 days, he gave comments on 28 of the
> 50 amendments he reviewed during the rating period
> after 45 days.

21

Exh. A, ¶ 7.  Plaintiff's supervisors made similar observations about his failure to meet deadlines in each of his subsequent annual reviews.  Id.  These reviews also observed that plaintiff needed to work on making fewer inappropriate comments and improving his analytical skills by consulting more with other staff members and supervisors regarding staff positions and precedents.  Id.  In addition, plaintiff's annual reviews noted that he needed to keep better apprised of new developments and rarely worked with other members of the staff, except when instructed to do so.  Id.

By contrast, the only employee in plaintiff's office who management selected for participation in the Repayment Program, KCR, clearly met all of the specific qualifications identified in Article 25 of the CBA.  Unlike plaintiff, KCR had received an "Outstanding" rating on each of his annual performance reviews during his tenure with the Agency.  Exh. A, ¶¶ 9-11.  In their July 30, 2003 memorandum recommending KCR for inclusion in the Program, Mr. Donaty and Mr. Pfordte described KCR as a "highly qualified member of the Division of Investment Management's staff" who "participates, leads and plays a critical role in reviewing the annual reports to shareholders, registration statements, amendments to registration statements, proxy statements and other filings of investment companies and business development companies."  Id.  They noted that KCR "is known

22

throughout the Office for his skills in analyzing difficult fund accounting issues, and he kindly provides assistance on difficult or novel accounting issues to others in the Office and the Division." Id. The memorandum further described KCR as "an important part of this office" whose "experience at the SEC and unique skills as a CPA and attorney would make him a valuable addition for an accounting firm, law firm or fund complex." Id. It noted that if "[KCR] were to leave the Agency, he could reasonably expect to obtain at least double his current salary" and that his "departure would have a significant impact on [the Agency's] accounting and disclosure review program, a critical part of the SEC's mission, as further evidenced by his brief departure in 1999." Id. Additionally, the memorandum noted that KCR "gladly assumes the non-supervisory, ministerial duties of branch chief," and assists in training other staff, many of whom solicit his advice on complex issues. Id. Finally, KCR was described as someone with "high" or "one might say unique" qualifications who fills a "special need" for CPAs particularly given his expertise regarding the Sarbanes-Oxley Act of 2002. Id.

In sum, Mr. Donaty and Mr. Pfordte believed KCR's retention was "essential," given his experience and unique skills. Id. Plaintiff's retention, by contrast, was not. Exh. A at ¶¶ 5-7.

Plaintiff has no evidence that the decision to not include

23

him in the Repayment Program was a pretext for discrimination and/or retaliation.

<u>**CONCLUSION**</u>

For all the reasons set forth above, defendant Christopher Cox, Chairman of the SEC, respectfully requests that this Court enter an Order dismissing paragraphs 6 through 11 of the Complaint, and granting summary judgment with regard to the remaining allegations contained in paragraphs 12 to 31 [sic] of the Complaint.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

OF COUNSEL:

Paul R. Brockmeyer
Senior Counsel
United States Securities and Exchange Commission
Office of the General Counsel

24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
RANDOLPH S. KOCH,                   )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   Civil No. 06-0656 PLF
                                    )
CHRISTOPHER COX, CHAIRMAN,          )
  U.S. SECURITIES AND               )
  EXCHANGE COMMISSION,              )
                                    )
        Defendant.                  )
_____)
```

ORDER

Upon consideration of defendant's motion to dismiss and for summary judgment, plaintiff's responding opposition, and the entire record in this case, and it appearing to the Court that the granting of this motion would be just and proper, it is by the Court this _____ day of _____, 2006,

ORDERED that defendant's motion be, and it is, granted, and it is further

ORDERED that this case be, and it is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Marina Utgoff Braswell
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

Randolph Koch
7701 Woodmont Ave., Apt. 807
Bethesda, MD 20814