UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Randolph S. Koch )
4511 Avondale Street, Apt. 204 )
Bethesda, MD 20814 )
phone: (301) 656-0645, )
)
    Plaintiff )
)
v. )
)
Harvey Pitt )
in his capacity as Chairman )
U.S. Securities and Exchange Commission )
450 Fifth Street, N.W. )
Washington, D.C. 20549, )
)
    Defendant )
)

CASE NUMBER   1:02CV01492

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discriminatio

DATE STAMP: 07/**/2002

## COMPLAINT

### Nature of the Action

1.    This is a federal sector equal employment opportunity action in which Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages and other relief in connection with adverse personnel actions taken against him by the United States Securities and Exchange Commission, his employing agency (the "Agency"). Such actions were discriminatory and in retaliation for activity protected under the civil rights and equal employment opportunity laws applicable to the federal government.

DEFENDANT'S EXH. 1
CIVIL NO. 06-0656 PLF

## Jurisdiction

2. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, 2202, and 2202, as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; Sections 501 and 505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794; and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

## Venue

3. Venue is proper in the District of Columbia because the actions complained of took place there.

## Parties

4. Randolph S. Koch is a citizen of the United States and a resident of Bethesda, Maryland. He is now and at all times hereafter mentioned was either an employee of or an applicant for employment with the United States Securities and Exchange Commission, having been continuously employed by that agency since December 16, 1991.

5. Defendant Harvey Pitt is the Chairman of the Securities and Exchange Commission. He is sued in that capacity.

## Factual History

6. Plaintiff is a white male. His age at the time of the alleged discriminatory and retaliatory actions was over 40 years of age. His religion is Jewish. Plaintiff suffers from

2

several major medical conditions which are disabling, including cardiovascular disease, gout and obstructive sleep apnea.

7. Plaintiff has filed multiple complaints alleging violations of Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act, and has otherwise participated in the agency EEO process.

8. Plaintiff applied for multiple attorney positions with the Division of Investment Management of the Agency during the summer and fall of 1991. It was several years later, after Plaintiff had been employed at the Agency for some time, that he learned that virtually every position for which he applied but was not selected was filled by a woman or a candidate substantially younger than Plaintiff, or both.

9. Plaintiff has been employed during his entire tenure at the Agency as a GS-12 Financial Analyst. His work assignments, however, are almost virtually identical to the work assignments given attorneys in the Disclosure Office in which he works. To the extent the assignments are not identical, his work assignments are virtually entirely legal in nature.

9. Plaintiff's work assignments are grossly inconsistent with the work assignments envisioned under Plaintiff's official Agency Position Description.

10. Plaintiff has met with stiff resistance from the Agency in his attempts to have his Position Description (and thereby, his position classification) revised to match his work assignments, or to have his work assignments revised to be consistent with his Position Description.

11. Plaintiff has repeatedly received performance appraisals on work assignments that are inconsistent with his Position Description and his position classification. Such

evaluations and appraisals have been improper and unfairly low. The Agency's refusal to comply with the law governing position classification and assignment of work is the result of the Defendant Agency's unlawful discrimination and reprisal for Plaintiff's resort to the Equal Employment Opportunity process.

12. As a result of the improper performance evaluations, Plaintiff has suffered great economic loss.

13. As a result of improper position classification, Plaintiff has suffered great economic loss.

14. Defendant Agency has imposed illegal and improper conditions upon Plaintiff's reclassification to an Attorney-Adviser Position. Such a position reclassification would more accurately reflect the work assignments performed by Plaintiff. The conditions imposed by the Agency upon such a reclassification, however, would likely result in Plaintiff's loss of certain due process rights. Such conditions would require Plaintiff to accept loss of benefits and privileges of employment which should otherwise attach given the substantial similarities between Plaintiff's current position and the position to which he should be properly assigned.

15. Not only has defendant Agency assigned improper and illegal work to Plaintiff, it has, for much of the period in question, required far more in terms of workload and volume than that assigned to others in his branch. Such work assignment is discriminatory and violates Plaintiff's ongoing efforts to obtain accommodations for his serious, disabling medical conditions.

16. On more than one occasion, Plaintiff's immediate supervisor denied Plaintiff the right to work compensatory time in order to complete his demanding and excessive work

assignments. This was a right that was frequently granted, however, to other employees in Plaintiff's office. Plaintiff, instead, was forced to work unpaid or "donated" time in order to keep current in his work assignments.

17. On multiple occasions, Plaintiff was required by Agency management to submit leave slips for de minimus morning lateness, when such requirements were not imposed on far more egregious absences by other employees, and notwithstanding that the lateness was the result of several medical conditions for which Plaintiff was unable to obtain accommodation under the Rehabilitation Act. Such lateness, moreover, usually followed a previous evening of working at least two or three hours of unpaid, "donated" time.

18. On at least one occasion, Plaintiff attempted to secure relief over some of the abovementioned matters through an agency grievance system. The Agency cancelled a grievance on grounds that Plaintiff had invoked the EEO process on related issues, notwithstanding that this was not a negotiated grievance system and Plaintiff had no right to raise the related EEO claims in the agency grievance procedure. Plaintiff was thus denied the due process right available under the agency grievance system because he elected to pursue related, but not identical, claims in the EEO process.

19. On several occasions, Plaintiff has suffered in other ways at the hands of Agency management for his determination to seek redress for the violations of the civil rights and equal employment opportunity laws. The Agency Office of Inspector General has conducted several investigations concerning Plaintiff's allegations of wrongdoing. The Inspector General's investigations have clearly shown bias and prejudice against Plaintiff in favor of Agency Management. Clearly, the Agency Inspector General's Office sees its mission as to protect management by shielding it from challenge on any grounds,

including those involving allegations of equal employment opportunity violations. Such actions by the Inspector General have had the effect of depriving Plaintiff of protection under certain laws. In particular, such actions are motivated by the Inspector General's determination to fend off EEO challenges, among others, to Agency Management's misconduct.

20. Similarly, the Office of Equal Employment Opportunity (OEEO) has utterly failed to conduct itself in a neutral way, as is required under the organic federal statute and Equal Employment Opportunity Commission regulations. The OEEO has unfairly and improperly dismissed allegations in Plaintiff's complaints, has usually failed to conduct fair, neutral and complete investigations, and in other ways has attempted to thwart Plaintiff's participation in and access to the EEO process. On numerous occasions, OEEO personnel have treated Plaintiff in a disrespectful and hostile manner. Because of the refusal of office personnel to respond to reasonable inquiries, Plaintiff has, at times, found it very difficult or impossible to obtain information necessary to pursue his rights. In almost every instance, the offending OEEO staff person was an African American. Plaintiff believes that much of the hostility stemmed from Plaintiff's original complaint alleging racial discrimination by an African American management official, Gladwyn Goins. On repeated occasions, moreover, Plaintiff has had complaints dismissed on frivolous grounds, particularly given that proper and fair processing would dictate that Plaintiff be given the opportunity to clarify allegations.

21. The Agency has repeatedly denied Plaintiff the use of adequate, but reasonable, grants of official time to work on EEO matters. Such right is guaranteed in EEOC

6

regulations. When grants have been made, they have been so limited as to be virtually useless.

22. On one occasion, Plaintiff attempted to compete for a promotion. The promotion was clearly designed with pre-selection in mind. When Plaintiff raised questions about the promotion's design with the Agency's Office of Administrative and Personnel Management, the Agency withdrew the promotion announcement and surreptitiously reposted the promotion announcement without following the usual informational and notice procedures, thus hiding the opportunity from Plaintiff's attention until it was too late for him to make a meaningful application.

23. In 1997, the Agency rescinded substantial portions of Plaintiff's balance of annual leave. Such action was done without explanation or justification. The rescission of Plaintiff's leave, which he had earned, followed closely upon Plaintiff's success in getting an EEOC administrative judge to consolidate and remand for mediation several separate, but closely related EEO complaints. Such action by the administrative judge was done over the strong objections of the Agency, and clearly provoked the animus and anger of Agency management. Plaintiff believes the rescission of leave to which he was entitled was in reprisal for his success before the EEOC regional office.

24. Also in or about 1997, the Agency increased Plaintiff's workload, notwithstanding his ongoing requests that his workload be normalized, i.e., reduced to what could be reasonably completed within a forty hour workweek, and which would be consistent with workloads of other employees in his office.

25. In or about 1998, during a period of acute illness, the Agency refused to enter Plaintiff into the Agency's leave transfer program. The Agency delayed Plaintiff's

participation for approximately a year, when Office of Personnel Management regulations require that decisions be made within ten days.

26.  The Agency frequently and systematically denied approval of Plaintiff's leave requests under the Family and Medical Leave Program. Plaintiff believes this refusal was reprisal for Plaintiff's EEO activity.

27.  The Agency discriminatorily refused Plaintiff the opportunity to work and use credit hours.

28.  The Agency's advanced sick leave policy unfairly and discriminatorily denied Plaintiff's participation. Such policy arbitrarily denies participation to those with disabling medical conditions that necessitate episodic absences from work. Because of this unreasonable and illegal limitation, Plaintiff has been the victim of disability discrimination.

29.  The Agency has ignored Plaintiff's mid-1998 request for a gliding schedule as an accommodation under the Rehabilitation Act of 1973.

30.  The Agency failed to inform Plaintiff of the academic requirements to change position classifications from a Financial Analyst to Accountant, thus precluding Plaintiff's eligibility for a special pay rate. Such information was doled out selectively and discriminatorily, and only some employees were given a fair opportunity to demonstrate eligibility for conversion. Plaintiff was excluded, thus subjecting Plaintiff to significant economic loss, while other, favored employees were ushered into the program despite dubious qualifications and eligibility. Plaintiff asserts that he was excluded because of unlawful discrimination.

31. Plaintiff's immediate supervisor placed Plaintiff on leave restriction, in part, for using leave that was finite, limited and justified. Plaintiff had provided proper, authoritative medical documentation justifying Plaintiff's leave. The leave restriction, moreover, selectively singled Plaintiff out for harsher and more restrictive time and attendance requirements, when other employees who more severely and more willfully violated time and attendance requirements went unpunished. Such actions by Agency management were particularly vengeful, illegal and discriminatory, given that Plaintiff's limited tardiness was also repaid by donated time at the end of the day and was caused by Plaintiff's disabling medical disability. Such disability could have been ameliorated had the Agency been willing to arrange a reasonable accommodation, i.e., Plaintiff's longstanding request for a modest and limited schedule adjustment which would enable him to participate in a medically-supervised cardiac rehabilitation program prescribed by his cardiologist. Finally, the leave restriction ignored the singular dedication demonstrated by Plaintiff in doing agency work at home while he was on leave.

32. The Plaintiff has exhausted the administrative process available in the Securities and Exchange Commission and the Equal Employment Opportunity Commission. The EEOC issued decisions in this combined complaint on April 24, 2002 and April 25, 2002. Plaintiff received the decisions on April 30, 2002.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Randolph S. Koch demands trial by jury in this action of all issues triable by jury in this matter.

WHEREFORE:

The Plaintiff, Randolph S. Koch, respectfully asks the Court:

1.) to enter a permanent injunction against the Securities and Exchange Commission, it supervisors, employees and agents, ordering them to cease and desist from engaging in the discriminatory and retaliatory practices described above;

2.) To order such affirmative relief as is appropriate, including withdrawal of performance appraisals, promotion of plaintiff to position of GS-14, Attorney Advisor;

3.) To award plaintiff back pay, forward pay, payment of special pay rate differential applicable to Attorney-Advisors, and other compensatory and punitive damages, including, but not limited to costs, disbursements, and reasonable attorney's fees; and

4.) To order whatever other equitable relief the Court deems appropriate.

Respectfully submitted,

July 26, 2002
Date

RANDOLPH S. KOCH
4511 Avondale Street, Apt. 204
Bethesda, MD 20814
(301) 656-0645