Defendant's Exhibit

B

Civil No. 06-0656 PLF

Case 1:06-cv-00656-PLF    Document 6-4    Filed 10/12/2006    Page 1 of 10

```
 1   UNITED STATES SECURITIES AND EXCHANGE COMMISSION
 2
 3   In the Matter of:      )
 4                          )  File No. EEO 18-03-04
 5   EEO 18-03-04           )
 6   WITNESS:   Number One
 7   PAGES:     1 through 41
 8   PLACE:     Securities and Exchange Commission
 9              901 E Street, N.W., Room 10100
10              Washington, D.C.  20549
11   DATE:      Thursday, January 8, 2004
12
13        The above-entitled matter came on for hearing, pursuant
14   to notice, at 1:00 p.m..
15
16
17
18
19
20
21
22
23
24              Diversified Reporting Services, Inc.
25                       (202) 467-9200
```

ORIGINAL

```
 1   APPEARANCES:
 2   On behalf of the Securities and Exchange Commission:
 3        IRA B. KIRSCHBAUM, ESQ., Investigator
 4        6326 Crosswoods Drive
 5        Falls Church, VA  22044
 6        (703) 941-9236
 7
 8   On behalf of the Witness:
 9        RANDOLPH S. KOCH, Pro Se
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
 1                    C O N T E N T S
 2
 3    WITNESSES:                        EXAMINATION
 4    Randolph Stuart Koch                   4
 5
 6    EXHIBITS:      DESCRIPTION        IDENTIFIED
 7    None.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                                    4

1                    P R O C E E D I N G S
2            MR. KIRSCHBAUM:  Good afternoon.  Today is
3    Thursday, January 8th, and the time is approximately
4    1:00 p.m. Eastern Standard Time.
5            This testimony is taken in connection with the
6    investigation of SEC EEO Complaint No. 18-03-04 filed by
7    Randolph Koch.
8            My name is Ira B. Kirschbaum.  I'm an independently
9    contracted attorney authorized by the EEO Office of the
10   Securities and Exchange Commission to conduct this
11   investigation pursuant to EEOC Regulation 29 CFR, Section
12   1614.108.
13           I would now like to administer the oath in
14   connection with my investigative authority.  Will you please
15   raise your right hand?
16   Whereupon,
17                    RANDOLPH STUART KOCH
18   was called as a witness and, having been first duly sworn,
19   was examined and testified as follows:
20                         EXAMINATION
21           BY MR. KIRSCHBAUM:
22       Q   Please state and spell your full name.
23       A   The first name is Randolph, R-a-n-d-o-l-p-h, middle
24   name, Stuart, S-t-u-a-r-t, last name, Koch, K-o-c-h.
25       Q   You are providing testimony as the complainant in

5

1  connection with the earlier identified complaint.
2          These proceedings are confidential. You should not
3  discuss the complaint or any testimony with anyone other than
4  me or the staff of the SEC's EEO Office.
5          Do you have any questions before we begin?
6    A   I don't think that's correct. Suppose I hire a
7  representative or consult with a representative?
8    Q   You're correct.
9    A   I can discuss the testimony with a potential
10 representative.
11   Q   Yes, absolutely, and, in fact, I was going to ask
12 you about that right now.
13         Now, you have the right to a representative with
14 you for today's testimony, but I note that you have not
15 brought a representative with you today. I assume you are
16 waiving that right for the purpose of today's testimony?
17   A   Correct.
18   Q   Okay. Now, for the record, I would like to
19 summarize the issue accepted for the investigation, and that
20 is whether the SEC discriminated against you on the basis of
21 your religion (Jewish), physical disability, age -- and I
22 understand your date of birth is May 17, 1947; is that
23 correct?
24   A   Correct.
25   Q   And in reprisal for prior EEO activity, when your

      6

1  supervisor, Frank Donaty, D-o-n-a-t-y, by memorandum dated
2  July 31, 2003, declined to recommend you for the Student Loan
3  Repayment Program.
4      A    Correct.
5      Q    Now, I would like to ask you, did you nominate
6  yourself for that program?
7      A    I -- I'm not sure what you mean by that question.
8  If you're interested in applying for the program, as I
9  recall, you request -- I think you fill out a form and
10 request that your supervisor recommend you for the program.
11         That's my recollection.  I don't recall exactly.
12     Q    Okay.
13     A    I did request that they recommend me.
14     Q    Okay.
15     A    I think I filled out a form.  I can't seem to find
16 it.  I may have taken it home.
17     Q    Okay.  Thank you for that clarification.  And I was
18 going to ask you for a copy of that form.  If you can find
19 it, would you attach it to the affidavit?
20     A    I think that you'd find it much easier if you
21 requested it of management.  They should have a copy.
22         I don't know that I can easily find a copy at home.
23 If it's not in my office here, I'm not sure what I did with
24 it.  I probably took it home and put it somewhere.
25     Q    Okay, I will do that.  And did that form go to

1  Mr. Donaty?

2      A    As I recall, it did.

3      Q    Now, I want to ask you, why do you think that Mr.
4  Donaty's decision not to recommend you for the Student Loan
5  Program was based, at least in part, on your religion?

6      A    Because of Mr. Donaty's past actions, all of which
7  are just too extensive to discuss in this session. I
8  couldn't even remember all of them. Many, many hostile
9  actions by Mr. Donaty.

10          I am the only Jew in the Disclosure Office outside
11  of one manager. They don't hire Jews there. I'm the only
12  one who has been treated in a disparate manner in a range of
13  different ways. And so, therefore, I conclude that my
14  religious persuasion plays a role, especially given the fact
15  that they don't hire Jews, and virtually every other office
16  in the division has a substantial number.

17      Q    Okay. Now, the more detail that you can give me,
18  the better, obviously. So if you feel that you have been
19  treated unfairly in some way, it would be helpful if you
20  could give details as to --

21      A    You know, we're talking about nine or ten years of
22  history.

23      Q    What about confining it just to the past year or
24  so? Anything that comes to mind in connection with that?

25      A    Well, it would be -- he hasn't involved in many

8

1  actions. It would be this, and it would be the fact that he
2  did not give me an extension of time to submit a request for
3  merit pay.
4     Q   Okay. Now, I want to ask you the same question
5  with regard to your age. That is, why do you think that Mr.
6  Donaty's decision not to recommend you for the Loan Repayment
7  Program was based, at least in part, on your age?
8     A   Well, I really can't answer that until I see data
9  on who was approved for the program. I'll answer that
10 question when you can produce the data on who was approved
11 and who was denied the program.
12         I mean, the onus is on the agency to show how they
13 allocated the student loan repayments.
14    Q   And I will be asking for comparative data, and you
15 will have an opportunity to take a look at that.
16    A   Yeah, I have to see that data. My suspicion is
17 that it went disproportionately to younger people. I think
18 it's a program that may be -- in its very design is
19 discriminatory, maybe.
20         They probably are not used to a person who's 56
21 years of age requesting participation in the Student Loan
22 Repayment Program, and I think it was designed to benefit
23 those who are much younger.
24         In that sense, I'm not saying it's necessarily Mr.
25 Donaty. It may be the design of the program. It may be the

1    agency.

2    Q    Now, you also said that you think that his decision
3    was based, in part, on physical disability.

4         What physical disability or impairment are you
5    referring to?

6    A    Cardiovascular disease, obstructive sleep apnea.
7    Within the cardiovascular disease, would be hypertension,
8    lipid disorders, history of a myocardial infarction.

9         This is part of a long-term pattern by Mr. Donaty
10   of discrimination. Here again, it would be voluminous to
11   discuss everything, and I couldn't discuss everything without
12   reference to hundreds and hundreds of pages of documents.

13        But I think it was back in 1998, Mr. Donaty started
14   screaming at me in a closed session in his office, saying I
15   don't have a disability. He said, "I know what a disability
16   is." He said, "You're not disabled."

17        Well, the fact is, disability can take many forms
18   under the law. I mean, it can be a current inability to
19   perform certain major life activities, or it can be a history
20   of impairment.

21        And even if he thinks that, based on his own
22   observation, that I can perform major life activities, I do
23   have the history of an impairment, and I've raised that with
24   him before in terms of requesting adjustments to work
25   schedule, adjustments in workload, and they've been