Defendant's Exh.

C

Civil No. 06-0656 PLF

1

1  UNITED STATES SECURITIES AND EXCHANGE COMMISSION

2

3  In the Matter of:        )

4                           )           ORIGINAL

5  EEO 18-03-04             )

6  WITNESS:   Number 2

7  PAGES:     1 through 23

8  PLACE:     Securities and Exchange Commission

9             901 E Street, N.W., Room 10100

10            Washington, D.C.

11 DATE:      Tuesday, January 13, 2004

12

13            The above-entitled matter came on for hearing,

14 pursuant to notice, at 10:05 a.m..

15

16

17

18

19

20

21

22

23

24            Diversified Reporting Services, Inc.

25                   (202) 467-9200

```
1   APPEARANCES:

2

3   On behalf of the Securities and Exchange Commission:

4        IRA B. KIRSCHBAUM, ESQ., Investigator

5        6326 Crosswoods Drive

6        Falls Church, VA   22044

7        (703) 941-9236

8

9                    *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                    P R O C E E D I N G S
 2         MR. KIRSCHBAUM:  Good morning.
 3         MR. DONATY:  Good morning.
 4         MR. KIRSCHBAUM:  Today is Tuesday, January 13th,
 5   and the time is approximately 10:15 a.m. Eastern Standard
 6   Time.
 7         This testimony is being taken in connection with
 8   the investigation of SEC EEO Complaint No. 18-03-04 filed by
 9   Mr. Randolph Koch.
10         My name is Ira B. Kirschbaum.  I'm an independently
11   contracted attorney authorized by the EEO Office of the
12   Securities and Exchange Commission to conduct this
13   investigation pursuant to EEOC Regulation 29 CFR, Section
14   1614.108.
15         I would now like to administer the oath in
16   connection with my investigative authority.  Will you please
17   raise your right hand?
18   Whereupon,
19                     FRANK JOHN DONATY, JR.
20   was called as a witness and, having been first duly sworn,
21   was examined and testified as follows:
22                           EXAMINATION
23         BY MR. KIRSCHBAUM:
24   Q     Please state your full name.
25   A     Frank John Donaty, Jr.
```

4

1    Q    Spell that, please.
2    A    Last name is spelled D-o-n-a-t-y.
3    Q    And would you indicate for the record your age?
4    A    Fifty-eight.
5    Q    And do you have any physical disabilities?
6    A    No.
7    Q    Your religion?
8    A    Methodist.
9    Q    Have you yourself filed an EEO complaint or been a
10   witness in such a complaint within the past three years?
11   A    I have never filed a complaint. I have been a
12   witness in some complaints during the last -- at least the
13   last three years.
14   Q    Okay. I don't need to ask you specifics about
15   those.
16   A    I can tell you all the complaints involve Mr. Koch.
17   Q    Okay. Now, you were providing testimony as a
18   witness in connection with the earlier identified complaint.
19   These proceedings are confidential. You should not discuss
20   the complaint or your testimony with anyone other than me or
21   the staff at the SEC's EEO Office or a representative, if you
22   have a representative.
23        Do you have any questions?
24   A    No.
25   Q    Okay. Now, you do have a right to have a

1  representative with you for today's testimony. I note that
2  you have not brought a representative with you today. I
3  assume you are waiving that right for purposes of today's
4  hearing; is that correct?
5      A    Yes.
6      Q    Okay. And, again, for the record, I'd like to
7  summarize the issue accepted for the investigation, and that
8  is whether the SEC discriminated against the complainant, Mr.
9  Randolph Koch, on the bases of his religion (Jewish), his
10 physical disability, his age, and in reprisal for prior EEO
11 activities, when you, as his supervisor, by a memorandum
12 dated July 31, 2003, declined to recommend him for the
13 Student Loan Repayment Program.
14          Now, I'd like to ask you some questions about that
15 program, please. Could you describe the purposes of the
16 program, and the process that one goes through, and also your
17 role in the process of that program?
18     A    My understanding is that the program is designed to
19 attract and retain highly qualified individuals by assisting
20 them in repayment of their federally-insured student loans.
21          My understanding of the process is that an employee
22 could nominate himself or herself for participation in the
23 program. Supervisors could also nominate individuals to
24 participate in the program.
25          Supervisors are also required to make certain

1    certifications with respect to the employee. The employee's
2    application and the supervisor's representations,
3    certifications with respect to the employee then go to, I
4    believe, OAPM, which ultimately decides who will participate
5    in the program and how much, if any, money they will get.
6        Q    Who decides?
7        A    I believe it's OAPM.
8        Q    Which stands for?
9        A    It's the Office of Administrative and Personnel
10   Management. I believe that's what the acronym stands for.
11   It's our personnel office.
12       Q    Okay.
13       A    And it's Jayne Seidman's office.
14       Q    I'm sorry?
15       A    Jayne Seidman, S-e-i-d-m-a-n. I believe it's her
16   office that decides who will participate and how much money
17   they will get.
18       Q    And is there a panel there that decides and makes a
19   recommendation to her or -- do you know how it works within
20   her office?
21       A    I don't know how it works within her office.
22       Q    Okay. Now, in the case of Mr. Koch, did he
23   nominate himself for the program?
24       A    Yes.
25       Q    And did he provide you with an application, a

1    written application?

2    A    Yes.

3    Q    Now, you provided with a copy of that, and I'd like
4    to show it to you and just review it with you a bit.

5         There are four pages that I have. There's a cover
6    page -- you faxed it to me -- then there's a memo from him to
7    you dated July 30th, a transmittal memo, more or less, and
8    then the third page contains room for certain information,
9    including item No. 6 is Justification.

10        Now, did he ever provide you with a justification
11   for his application?

12   A    No. What you have here is what I got from him.

13        I will also mention that although his memorandum --
14   cover memorandum is dated July 30th, when I left work on July
15   30th, probably between quarter of 5:00, 5:00, I had not
16   received this from Mr. Koch. I found this on my chair when I
17   arrived on July 31st.

18        But other than the material here, I received
19   nothing from Mr. Koch.

20   Q    Okay. And are those dates significant?

21   A    No, I just want to make it clear that I actually
22   didn't receive this until the 31st --

23   Q    Okay.

24   A    -- which was the deadline date.

25   Q    I see, okay. And then after you received this,

1   what did you do then?
2       A    I got it, I looked at it, I considered his request.
3   I looked at his performance ratings over the past several
4   years.  I looked at the certification that the supervisor is
5   required to make which is contained in the instructions to
6   the form.
7            And based on all that, I didn't believe that Mr.
8   Koch was the type of individual that should participate i
9   this program.
10      Q    Did you say the certification that the supervisor
11  is required to make?
12      A    The agency -- the instructions to the form require
13  the agency to make certain certifications, and I didn't feel
14  that I could make those, and I think my memorandum to him
15  indicates that.
16      Q    I see.  Now, I'd like to go over two things with
17  you in connection with his application.  One is the reg that
18  sets up the criteria for the program, and the other is the
19  memorandum that you wrote dated July 31, 2003, to him
20  explaining what your decision was in connection with his
21  application.
22           Now, the reg that I'm showing you is the one that's
23  contained in the collective bargaining agreement between the
24  U.S. Securities and Exchange Commission and the National
25  Treasury Employees Union dated 2002, and I think the

1   important part of that reg is Section 2, which sets up the
2   criteria for the program.
3           Is that correct?  Is that the section that you
4   focused on, or relied on?
5   A   I'm not sure that -- does Section 2 apply here?
6   And the reason I question that is the first sentence of
7   Section 2.  You know, is this to limit it to the 20 percent
8   that applies to nonprofessional job series positions?
9   Q   And then it goes on to say, "All nominations made
10  pursuant to this section must be supported by written
11  justification."
12          I see what you mean.
13  A   I don't know -- whatever this article says.  I
14  haven't read it in some time.  But I would be surprised if
15  you don't see this sentence, absent this word, somewhere
16  else.
17  Q   All right. Well, I should back up, I suppose, and
18  ask you, did you rely on this reg?
19  A   I looked at the reg, yes.
20  Q   Okay.  And can you point to anything in the reg
21  that you specifically referred to in your consideration?
22  A   Well, I noted the first paragraph, which describes
23  the purpose of the program.  I noticed the first sentence of
24  the second paragraph of Section 1, which says there is no
25  entitlement to participate in this program.

1       I read the entire article, and although it appears
2  that Mr. Koch met the qualifications to apply, that doesn't
3  mean that he automatically gets in.
4       Q    Okay.  Well, I'd like to show you the memo that you
5  wrote dated July 31, 2003, in which you say that -- well, you
6  refer to "the aforementioned criteria and concerns regarding
7  your performance, as reflected in the performance appraisals
8  over the past few years."
9            And I'd like to ask you if you could elaborate on
10 that and explain what you meant by that in making your
11 decision.
12      A    I looked at Mr. Koch's performance appraisals going
13 back five or six years.  I believe four of those put him in
14 the Fully Successful category, under our previous rating
15 system.  One of those, however, was an Unsatisfactory rating.
16           If you looked at his performance ratings going back
17 for ten years, you'll find he's never been rated better than
18 Fully Successful.  He has had a Minimally Successful rating,
19 he's had an Unsatisfactory rating.
20           Given that, I don't think he was the type of person
21 that -- for whom the program is designed.
22      Q    Now, I have the performance appraisals here for the
23 past five appraisal periods.  Could you tell me which of
24 these you referred to, or you were taking into account in
25 your decision, and could you take a minute to go through them

1   and tell me what in the appraisal you considered to be
2   especially significant?
3       A    I think it -- was there five of them there?
4       Q    Yes.
5       A    I think, as I said, four of them indicate that he
6   received a Fully Successful rating.  One of them shows an
7   Unsatisfactory rating.  Just the fact that he's never been
8   better than Fully Successful.  He did have the Unsatisfactory
9   rating.
10          Even in the Fully Successful ratings, I believe
11  there's discussions of him not meeting certain time
12  requirements.
13          Based on that, I just didn't see where he was an
14  individual for whom this program was designed.
15      Q    Okay.  Now, I see at the beginning of your second
16  paragraph you say that the agency must certify that the
17  employee is deemed to have high or unique qualifications,
18  meets a special need within the agency, is considered likely
19  to leave the federal government if such benefits are not
20  received, and retention of the employee is deemed essential.
21          Could you discuss Mr. Koch in connection with those
22  specifics?
23      A    I would not consider Mr. Koch to be an employee
24  with high or unique qualifications.  I don't believe he meets
25  a special need within the agency.  I don't believe he has any

1   thoughts about leaving the government if he doesn't get
2   participation in the program, and his retention is not
3   essential.
4       Q   Did anyone else in your office apply under this
5   program?
6       A   Yes.  There is one other individual that applied --
7   or was recommended to participate in the program.
8       Q   And who is that person?
9       A   Kevin Rupert.  Last name is spelled R-u-p-e-r-t.
10      Q   And what is his position?
11      A   He is a staff accountant.
12      Q   Did he also nominate himself?
13      A   I'm not sure.  Let me say something.  An individual
14  can nominate himself or herself.  An employee's supervisor
15  can also nominate that individual.
16          Mr. Koch's direct supervisor is Richard Pfordte.
17  Mr. Rupert's direct supervisor is Richard Pfordte.  Mr.
18  Pfordte did the recommendation for Kevin Rupert.  I signed it
19  as a reviewing official.  Mr. Koch gave me his application
20  and bypassed Mr. Pfordte because Mr. Pfordte was on vacation.
21          So with respect to Mr. Rupert's, I'm not sure
22  whether Mr. Rupert nominated himself or not.  I do know that
23  Mr. Pfordte did a recommendation for participation in the
24  program.
25      Q   Do you have a copy of that?

1    A    Right (indicating).

2    Q    The memo dated July 30th is from both you and Mr.
3    Pfordte to Jayne Seidman on the subject of the nomination of
4    Mr. Rupert for the program.

5    A    That is correct.

6    Q    Now, this is a two-and-a-half page, single-spaced
7    memo. Could you do this? Could you summarize this for us
8    and compare it to the qualifications that Mr. Koch brought to
9    the program?

10   A    Mr. Rupert is an outstanding employee. He does
11   excellent work. He's a staff accountant. He reviews a lot
12   of the same filings that Mr. Koch reviews.

13        Mr. Rupert is well thought of in the division when
14   it comes to consideration of complex and novel accounting
15   matters, as well as disclosure issues.

16        People come to Mr. Rupert for his advice. He knows
17   where to go when he has an issue or a problem.

18        Mr. Rupert did leave the Commission for a four- or
19   five-month period, I believe, back in 1999. Mr. Rupert since
20   his return has completed law school and passed the Maryland
21   bar.

22        Given his credentials, it's probable -- or possible
23   that he could decide to leave the Commission to go to work
24   for an accounting firm, a law firm, or a mutual fund complex.
25   He has the experience that people in the industry would look

14

1 for.

2 Q   Now, if you know, could you tell us what his age
3 is?

4 A   I don't know. My best guess would be somewhere
5 around maybe 45 to 50.

6 Q   And his religion?

7 A   That I do not know.

8 Q   Whether he has any physical disabilities?

9 A   I do know he has *Redaction*. Other than that, I
10 do not know.

11 Q   And do you know whether he has been involved in
12 prior EEO activities, either filing a complaint himself or
13 been a witness?

14 A   I'm not aware that he's done either, but I don't
15 know for certain.

16 Q   Okay.

17 A   I wanted to ask a question.

18 Q   Surely.

19 A   You mentioned that one of the things for which Mr.
20 Koch is maintaining discrimination is physical disability.

21 Q   Right.

22 A   Does he mention what that is?

23 Q   Yes, he does. I wonder if we could postpone that
24 question for just a few minutes?

25 A   Sure.

1   Q    I do intend to ask you specifically about his
2   disabilities --
3   A    Sure.
4   A    -- and if we could take that up at that time.
5   Okay.
6        I would like to ask you -- now, this may be going
7   over certain things that I've already asked you, and I'm
8   sorry if it is redundant, but could you talk about Mr.
9   Rupert's qualifications in connection with these same
10  criteria that are set out in the July 31st memo?
11  A    Mr. Rupert is someone with high qualifications, one
12  might say unique, given the passage of the Sarbanes-Oxley Act
13  in August of 2002. That act now requires us to make a review
14  of all investment companies at least once every three years,
15  and that review includes not only the disclosures made by the
16  investment company, but the financial statements of that
17  investment company.
18       Given that Mr. Rupert is a CPA, that is definitely
19  something that is needed now.
20       As I believe I said before, he is an outstanding
21  employee, and he's well thought of in the division. He meets
22  a special need, in that now we need CPAs, we need
23  accountants.
24       He -- I can't say that he has mentioned that he
25  would leave the government, but there's a good possibility,

1  given his educational background and his experience. And I
2  believe retention of Mr. Rupert is essential, given his
3  experience and the fact that he is an accountant.
4     Q   Now, Mr. Koch believes that your decision not to
5  recommend him was based, in part, on his prior EEO activity,
6  and that, in fact, at one point you expressed anger and
7  hostility towards him, he says, because of this activity.
8         Could you comment on that?
9     A   I don't know what to say other than, no, I didn't
10 consider his past EEO activity; and, two, I don't recall ever
11 becoming angry and hostile towards Mr. Koch.
12        I will say that it is my belief that Mr. Koch is
13 one who misinterprets and mischaracterizes a lot of things.
14    Q   And he also believes that the decision was based,
15 at least in part, on his age and on his religion.
16        Do you have any comments to make specifically with
17 regard to those allegations?
18    A   I'm older than Mr. Koch, so I -- if he's
19 complaining that I'm discriminating against younger people, I
20 don't know.
21        As far as his religion, no. My decision was not
22 based on his religion nor his age.
23    Q   Okay. And he also says that he feels that you've
24 discriminated against him because of his physical
25 disabilities.

## CERTIFICATE OF SERVICE

I, Marina Braswell hereby certify that on the __ day of September, 2006, I caused the forgoing Defendant's Motion to Dismiss and for Summary Judgment to be served by first class mail, postage prepaid upon:

Mr. Randolph Koch
7701 Woodmont Avenue
Apt. 807
Bethesda, MD 20814

and

4511 Avondale Street
Apt. 204
Bethesda, MD 20814

 

--------------------------------
MARINA BRASWELL
Assistant United States Attorney