## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RANDOLPH S. KOCH,      )
                )
          **Plaintiff**     )
                )
         v.          )     Civil Action 06-0656 (PLF)
                )
CHRISTOPHER COX,      )
    Chairman, U.S. Securities     )
    and Exchange Commission,     )
                )
         **Defendant**     )
                )
                )

RECEIVED

FEB 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### Introduction

Plaintiff filed his complaint in the instant civil action in order to redress his employer's unlawful age, religious and disability discrimination and retaliation against him.

Defendant's first -- and so far only -- response to the complaint has been the filing of a motion to dismiss or, in the alternative, for summary judgment ("motion").

We note as an initial matter there has been no opportunity for plaintiff to engage in any discovery whatsoever. In this regard, it is settled law that, considering the purpose of liberal discovery rules and the familiar test for summary judgment under Rule 56(c)(2) and under Rule 56(f), a dispositive motion will not be considered under Rule 56(c) until plaintiff has had a reasonable opportunity to conduct discovery. *See Berkeley v. Home Insurance Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)(holding that Rule 56(f) motion is to

be granted as a matter of course unless counsel lacked diligence in pursuing discovery); see also, *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1379 (D.C. Cir. 1988)(holding that it is premature for a district court to grant summary judgment "without first permitting discovery on the merits"). Indeed, the Supreme Court has directly stated that "[a]s a general rule, summary judgment is appropriate only after adequate time for discovery." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)(emphasis added); *see also, Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n.5 (1986)(Court declared that a summary judgment "must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").

Here there have been no depositions, answers to interrogatories, document production or admissions. Indeed, there have been no interrogatories or document requests or depositions at all since discovery has not even started. Thus, plaintiff has not had any "opportunity to discover information that is essential to his opposition" whatsoever. Accordingly, on this date herewith plaintiff has filed a motion under Fed. R. Civ. Proc. Rule 56(f) seeking the opportunity to discover in order to oppose the motion for summary judgment and to otherwise prepare his case.

Additionally, we also note at the outset that defendant's argument that plaintiff cannot possibly meet the prima facie case is nothing if not disingenuous. In this regard, the D.C. Circuit has made clear that a Title VII plaintiff need not set forth the elements of a prima facie case at the initial pleading stage of a law suit. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114-15 (D.C. Cir. 2000). Here again, discovery is in order, and defendant's dispositive motion -- which, by virtue of it being supported by matter extrinsic to the pleadings, must be viewed as a motion for summary judgment and

disposed of in accordance with Rule 56 (see Rule 12(b), Federal Rules of Civil Procedure) – can be considered only after plaintiff has had a fair opportunity to engage in discovery. Indeed, as plaintiff will point out, a prima facie case need is not required if there is direct evidence of discrimination.

Based on these considerations, defendant's motion to dismiss or, in the alternative, for summary judgment must be denied in its entirety at this juncture.

## Argument

### I.     The Legal Standards for Considering a Rule 12(b)(6) Motion to Dismiss and a Rule 56(c) Motion for Summary Judgment Require That Defendant's Motion Be Denied

As we now demonstrate, defendant's motion is insufficient to meet the criteria for either a motion to dismiss under Rule 12 (b)(6), Fed R. Civ. P., or for a motion summary judgment under Rule 56(c), Fed R. Civ. P..

### A. Notice Pleading Does Not Require Plaintiff to Plead Every Element of His Claim to Survive a Motion to Dismiss Under Fed. R. Civ. P. Rule 12(b)(6)

The purpose of a motion to dismiss is not to test whether plaintiff will prevail on the merits of his case, but instead whether the plaintiff has properly stated a claim. *Glymph v. District of Columbia*, 180 F.Supp.2d 111, 113 (D.D.C. 2001). Thus, "[f]or a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests." 180 F.Supp.2d at 113, citing Rule 8(a)(2), Fed. R. Civ. P.; *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957). In evaluating the sufficiency of the complaint, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) -- overturned on other grounds by

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Moreover, with respect to a claim of discrimination, as previously noted, the D.C. Circuit has held directly that a plaintiff is not required to set forth the elements of a prima facie case at the initial pleading stage. *Sparrow v. United Air Lines, Inc.*, 216 F.3d at 1114.

Here, the complaint more than passes muster. Taken as true -- as they must be at this juncture -- the allegations in the complaint state a claim of employment discrimination and retaliation against defendant for which relief can be granted.

**B.    Legal Standard for Motion for Summary Judgment under Rule 56(c), Fed. R. Civ. P.**

Quoting Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, [produced documents] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir.1995). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson, v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. LCvR 7.1(h) requires that each motion for summary judgment be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, including references to the relevant

4

parts of the record. Similarly, an opposition to such a motion must be accompanied by a statement listing all material facts as to which the opposing party contends there is a genuine issue, including references to the relevant parts of the record. *Burke v. Gould*, 286 F.3d 513, 519-20 (D.C. Cir. 2002). In order to meet this burden, a plaintiff must be allowed discovery. Accordingly, the D.C. Circuit has held that a "decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision." *Nixon v. Freeman*, 670 F.2d 346, 262 (D.C. Cir.1982). Here, there has not yet been an opportunity for the facts to be developed at all. There has been no discovery as the complaint was only just filed and, avoiding a responsive pleading, defendant filed his dispositive motion in lieu of an answer. Thus, no joint report under Local Rule 16.3 has been filed (or even discussed) and no initial scheduling conference has been held or a scheduling order issued. Thus, there is no "record" in this case. Accordingly, defendant's motion for summary judgment is, at the very least, premature, and must be denied or put off until discovery in this case has been concluded.

By submitting exhibits and an affidavit of Frank J. Donaty, defendant has transformed its motion to dismiss into one for summary judgment which is subject to the strictures of Rule 56. As demonstrated above (and in plaintiff's Rule 56(f) motion, filed on this date herewith), plaintiff is entitled to engage in discovery in order to obtain an opportunity to develop the factual record before he fully addresses the many contentions advanced by the defendant. Nevertheless, he will proceed to make some preliminary points, all of which will highlight why discovery is necessary before consideration of summary judgment.

## II.    Defendant's Contentions Regarding Plaintiff's Qualifications for the Program are Without Merit.

Defendant contends that Koch fails to pass the threshold qualification of possessing "high or unique" qualifications that meet "a special need" within the SEC, that he is likely to leave the SEC if not included in the Repayment Program, and that retaining him as an employee is considered essential for the SEC.

In fact, Koch possesses qualifications that far exceed any other employee in the office in which he works, both in terms of educational accomplishments and work experience.

Koch attended one of the most selective law schools in the country, Georgetown University Law Center, graduating with honors in 1983. During his law school tenure, because of his academic accomplishments, Koch received invitations to join the editorial staff of several student-edited law journals; he elected to join the editorial staff of *The Tax Lawyer*, for which he served as an Associate Editor. Since attending law school, Koch received employment offers from a number of highly-respected law firms, working for Ginsburg, Feldman, Weil and Bress while in law school. He also worked for the major Chicago law firm of Isham Lincoln and Beale, and the New York law firm of Hughes Hubbard and Reed. At other times, Koch received (but did not accept) employment offers from several prestigious government employers, among them the Tax and Antitrust Divisions at the U.S. Department of Justice.

It is well established that the larger law firms, particularly those with substantial investment management and securities practices, often find quality and reputation of law school to be a significant, if not decisive, factor in attorney hiring decisions.

Koch has attempted to survey the academic backgrounds of the various attorneys

in the Office of Disclosure (Koch's employing office) and he is only able to identify two,
Houghton Hallock and Kimberly Browning, who attended a school of the caliber of
Georgetown or higher.  Hallock attended Harvard Law in the 1960's, but, Koch does not
believe he was a candidate for the student loan reimbursement.  The other attorney is
Kimberly Browning, who attended Georgetown.  By contrast, Rupert, identified as the
single comparator by defendant (but not by the plaintiff) attended the University of
Baltimore law school.  Other employees have attended law schools (Baltimore, Howard,
New England, and others) whose graduates are not generally recruited by law firms with
substantial investment management practices.[1]  In particular, Koch can easily prove that
he has high and unique qualifications by virtue of his academic accomplishments,
publications and publication editorial experience, and law firm work experience, as
compared to Rupert.  Koch believes this status would hold up when compared to the
entire universe of recipients of the student loan reimbursement.

Koch however, requires a full and fair opportunity to perform reasonable
discovery to make his showing.  He must have access to the work experience and
academic backgrounds of all his comparators, including Kevin Rupert. The SEC has this
information, but Koch obviously does not.

Finally, Koch has published in the field of securities law, having co-authored a
monograph on the revised Securities Law Form S-8.  The SEC has not identified any

---

[1] Koch performed a hiring analysis of three law firms known for their investment
management practices: Kirkpatrick Preston Ellis and Gates; Willkie Farr and Gallagher;
and Dechert LLP.  Using the law school search function on the firm's websites, he found
one University of Baltimore law school graduate among the three firms. He found over
100 Georgetown law graduates employed at the three law firms. Accessible at
http://www.klgates.com/professionals/; http://www.willkie.com/attorneys/attorneys.aspx:
and http://www.dechert.com/lawyers/.

comparator who has similarly published. Koch seeks discovery to determine the publishing of any of his comparators, particularly, but not limited, to Kevin Rupert.

Koch will also seek to demonstrate that such academic qualifications make a difference when compared to the other employees who received the student loan reimbursement. Koch can prove, with adequate discovery, that he possesses credentials and qualifications that far exceed the average at the SEC, and that he easily qualifies as a person with high or unique qualifications.

Koch must be afforded the opportunity to perform the discovery necessary to demonstrate that, in comparison to other employees, he possesses unique, superior and extraordinary qualifications.

Koch also needs discovery to examine the motives of Donaty, and whether he was the sole decision maker and whether he discussed Koch's nomination with any other agency personnel. Koch is well aware of how the SEC operates, and it is inconceivable that Donaty would not have acted without consulting other officials and other offices in the SEC. Koch has also learned, from reading a very recent arbitral decision[2]-- in which a neutral arbitrator determined that the SEC's cancellation of a related program for repayment of PLUS student loans resulted in disparate impact age discrimination--that all denials at the supervisorial level must be reviewed by the agency's personnel office. [3] Donaty's denial of Koch's application must have been reviewed by the personnel office; therefore, that office's actions must be subject to discovery as a possible second locus of

---

[2] *In the Matter of U.S. Securities and Exchange Commission and National Treasury Employees Union, Chapter 293*, SEC Case No. AR-05-013 (January 31, 2007) (Sharnoff, Arb.)
[3] *Id.* at 40.

discrimination and retaliation. The various exhibits submitted by the SEC with their motion fail to reveal anything about this review, therefore, Koch must have discovery to learn what that office did, who participated in the review, what they considered, and how they reasoned that Donaty's denial was fair and proper.

It should be noted, moreover, that Donaty, who is well into his sixties, has apparently only worked at the SEC since he was in high school. Donaty is not an attorney and has never worked in the private sector, particularly not a law firm, accounting firm, investment advisor or mutual fund service company. He would have no significant knowledge of the recruitment preferences or activities of these private sector employers. He is ill-suited to make any judgments about whether Rupert, or Koch, or anybody else, would be in demand by private employers.[4]

---

[4] In fact, Koch questions whether Rupert has the work ethic and work style to survive in a private law firm or big accounting firm. Koch has worked in three law firms, and has never seen an attorney leave the office regularly at 4 pm, as Rupert currently does at the SEC. Even though Rupert starts early, he does not put in extra hours, and works the regular forty hour week. Koch has observed that in every firm in which he has worked, extra time as necessary on evenings and weekends is expected. Koch has only seen Rupert work past that quitting time on a few occasions. Further, Koch observed that for many years in the 1990's, Rupert would take extremely long breaks in the snack bar, usually running about an hour in the morning and an hour in the afternoon, while he shot the breeze with Kathy Tewey, another employee. More recently, when the Division was on the fifth floor at the SEC's old headquarters, Koch was amazed at the length of the bull sessions Rupert would have primarily with Jeremiah de Michaelis. The protracted laughter and guffaws would emanate from Rupert's office on the other side of the wall, and would go on for the better part of an hour. Such relaxation and lack of attention to work was only possible if Rupert was not being assigned a workload comparable to the busier employees, like Koch. By contrast, and as is typical in the private sector, Koch has routinely performed a great deal of donated work. In past years, Koch was able to verify that Koch was handling a much heavier workload than Rupert, but the database is no longer available to Koch. Discovery of that tracking database is essential to Koch's ability to challenge the summary judgment motion.

Donaty's denial is replete with subjective statements about Koch, his performance, whether he's the "type of person" for whom the program was intended, whether Koch might leave if not provided the loan reimbursement, whether Koch contributes an unusually high or unique quality of service to internal and external customers.

Here again, Donaty presumes to make a judgment about factors that he knows nothing about. Koch very rarely has any occasion to work with Donaty or for Donaty to review his work. Even though most of Koch's contact is with his immediate supervisor, Koch's work requires him to initiate and handle independently contact with his external customers, i.e., the law firms and mutual fund companies for which he has responsibility. Much of Koch's work is telephonic, yet rarely does the situation necessitate a joint call involving the plaintiff and his immediate supervisor, and virtually never with Donaty.[5]

---

[5] When Donaty was Koch's immediate supervisor, an arrangement which ended almost ten years ago, Koch found that Donaty had a real aversion to talking to external customers. Frequently, Donaty, alone among branch chiefs, would hand over a phone message from a registrant or attorney, asking Koch to handle the call, notwithstanding that the external customer wanted to talk directly to Donaty to work out an issue at the higher level. Koch sometimes received complaints from registrants and counsel about this lack of responsiveness by Donaty and Donaty's supervisor, Assistant Director Carolyn B. Lewis, who also avoided registrant's attorneys. Most importantly, Koch must have the opportunity to discover Donaty's real knowledge of Koch's work in this regard Koch must have the opportunity to depose Donaty.

Further, Koch must have the opportunity to show that, notwithstanding the asserted reasons for the loan reimbursement denial, Koch has contributed uniquely to the mission of the disclosure office. The SEC has sole possession of Koch's work product, and Koch must be given the opportunity to discover this work product and show that he has often worked on some of the most novel, sophisticated and challenging assignments in his branch, if not the entire disclosure office. Koch disputes any assertion made by the SEC that he does not work on a substantial number of novel, complex and non-routine assignments. This fact, in turn, would establish that Koch possesses unusual, unique qualifications which are essential for the Disclosure Office's program.

This Court should not decide defendant's summary judgment motion, moreover, without permitting Koch to challenge the accuracy and legality of the performance appraisals upon which Donaty purportedly based his decision. The agency has never fully or convincingly explained how a person classified as a financial analyst, could be performing the exact same work as attorneys and be evaluated on the same standards as attorneys, when the financial analyst position description calls for Koch to only perform a limited portion of the review, that involving the financial content. Koch does not possess all the relevant position descriptions, and needs to discover these.

Defendant's assertions concerning Koch's performance appraisals in comparison to Rupert fall apart when Koch's contribution is analyzed in terms of volume. As noted, Koch must have discovery of the tracking database, upon which performance appraisals have been based during the entire tenure of Koch's employment. Also as stated, Koch has seen the database numbers, and can assert without qualification that for most of the 1990's, Koch handled an extraordinarily heavy workload, particularly in comparison to

Kevin Rupert. It is no wonder that Koch had lower appraisals, given that Donaty and Lewis repeatedly assigned a much heavier workload to Koch than to Rupert. In fact, during much of the period, Koch formed a valid impression that Donaty was trying to protect Rupert with a light workload.

It should be noted, moreover, that the SEC is essentially misleading the court by attempting to redefine Koch's claim, thus asserting that Koch could not have been the victim of discrimination because of comparisons only to one other employee: Rupert. Koch has never asserted age discrimination by reference to Donaty's purported actions in denying Koch and selecting Rupert. Instead, Koch asserts that the program, as administered agency-wide, is discriminatory. Koch primarily alleges that Donaty's action—whether or not he acted alone, and that is subject to some doubt—is the result of retaliation.[6] To the extent the SEC's pretextual justification is Koch's prior performance ratings, than religious and disability discrimination enter the case as well.

Defendant's motion is replete with subjective and conclusory assertions about Koch's purported deficiencies and Rupert's purported extraordinary qualities. Courts in this Circuit are to be wary of subjective statements, explanations or justifications  See *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1298 (D.C.Cir. 1998) ("...courts traditionally treat explanations that rely heavily on subjective considerations with caution. Particularly in cases where a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant, an employer's asserted strong reliance on subjective feelings about the candidate may mask

---

[6] Koch notes that Donaty has stated that Koch is not the "type of person for whom the program was intended," or words to that effect. Koch believes that such a statement suggests age bias, but Koch needs discovery to explore this further.

discrimination."). Such subjective statements should not serve as the basis for granting summary judgment, particularly when Koch has not yet had the opportunity to examine the statements, including the underlying facts and motivations.

In sum, whether, as defendant asserts, Koch can offer no facts to show that he was qualified for the program, is open to question until Koch can discover his work product, databases relating to his workload, performance appraisals, academic records and work histories of comparators, and whether the underlying personnel decisions, including those relating to his performance appraisals, were fair or the result of discrimination or retaliation. Koch must be given the opportunity to discover all relevant facts related to all other comparators, not just Rupert.

Further, the fact that Rupert was nominated and approved for the program suggests that the student loan program, much like the program granting retention bonuses, has been operated in a manner of reward for favored employees and cronies, with supervisors often manufacturing and fabricating cases for approval, where employees no more possess extraordinary qualifications nor are any more likely to leave the agency than would otherwise be the case. This is particularly true in the case of Rupert, who does not fit the required profile at all. As already noted, Rupert does not possess the academic qualifications that make him a likely candidate for a law firm job in the investment management field. Further, it is highly unlikely that Rupert would ever be hired for one of the major accounting firms performing work for mutual funds. In Koch's fifteen years at the agency, he can only recall one accountant who left the disclosure office, and that was to a trade association, the Investment Company Institute. Contrast that with the steady stream of departing mutual fund accountants from the Division's

Office of Chief Accountant heading to major accounting firms. Rupert, however, does not work in the Chief Accountant's office, which handles the more sophisticated and more novel policy-setting accounting issues. There is absolutely no evidence that Rupert is likely to go to either an accounting or law firm. When Rupert did leave, for a short period, he obtained employment in another federal agency, the Health Care Financing Administration. His motivation was to be closer to home because of an illness in the family, not because he was in high demand by a private sector employer. There is absolutely no evidence that the SEC can adduce that would demonstrate the need for a student loan reimbursement program for attrition resulting from inter-agency transfers. If the SEC disagrees, plaintiff should have the right to discover the basis therefore.

Defendant makes other arguments that are no more worthy of belief. For example, the defendant asserts that Koch cannot make out a prima facie case because Rupert, like Koch, suffers from sleep apnea, and therefore, Koch cannot establish that he was treated differently.

What defendant fails to state, however, is that a failure to accommodate is simply a form of discrimination under the Americans with Disabilities Act and the Rehabilitation Act. *See* 42 U.S.C. § 12112(b)(5)(A) (ADA provision) and 29 U.S.C. § 791(g) (Rehabilitation Act). When considering reasonable accommodation, the existence of a comparator is irrelevant.

Under the law, determination of whether an individual suffers from a disability is an individualized determination. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999). Both Koch and Rupert may have been diagnosed with obstructive sleep apnea, but it does not mean that both suffer from a disability under the Rehabilitation Act.

14

Defendant has not proffered any evidence that Rupert's diagnosis has established a disability under the Act; on the other hand, the SEC's own occupational medical consultant, employed by the Federal Occupational Health Administration, has already evaluated Koch and advised the SEC that Koch has a disability under the Act. In fact, the agency's own disability program office, which passes on disability requests and accommodations, has long recognized that Koch has such a disability and has, as a result, granted several accommodations. The fact that Rupert has a similar diagnosis does not establish that the impairments are identical. Neither does it prove that the SEC has not discriminated or failed to effectively accommodate.[7] Nevertheless, should the court find merit in the argument by defendant, plaintiff should be entitled to reasonable discovery regarding Rupert's condition, including the authority to subpoena Rupert's medical records.

## III.    Plaintiff Must be Allowed Discovery to Determine Motive and Intent to Establish His Case of Retaliation.

Plaintiff's complaint alleges that the denial of Koch's application for the student loan program is the result of Koch's past and ongoing protected activity under the EEO laws. Here again, the existence of a comparator is not necessarily relevant.

As has been noted, Koch need not establish the prima facie case at this point. He

---

[7] Notwithstanding the fact that the current administration in the Office of Human Resources has recognized, acknowledged and granted accommodations for Koch's disability of obstructive sleep apnea, the agency, under a different personnel administration, refused to engage in the required interactive process concerning Koch's cardiovascular disability, and summarily rejected Koch's attempts to have his workload reduced or for schedule flexibility so he could participate in medically-prescribed, medically-supervised cardiac rehabilitation. The agency's past actions have seriously damaged plaintiff's health. Further, there is no evidence that Rupert suffers from serious heart disease of the kind suffered by Koch.

must, however, receive the opportunity to discover motive and intent before the court can consider a summary judgment motion on Koch's retaliation claim.

At some point, *if* plaintiff cannot prove direct evidence of retaliation or discrimination, plaintiff will be asked to establish his prima facie case. This will consist of three elements: (1) the plaintiff engaged in activity protected by the statute; (2) that the employer engaged in conduct having an adverse impact on the plaintiff; and (3) that the adverse action was causally related to the plaintiff's exercise of protected rights. *Passer v. American Chemical Society*, 935 F.2d 322, 331 (D.C.Cir. 1991).

Koch has engaged in protected activity, having filed multiple EEO complaints and several lawsuits prior to the 2003 application for the student loan program. The denial of the loan reimbursement was conduct that had an adverse impact on the plaintiff.

The only question left is a determination of whether the conduct having an adverse impact was causally related to plaintiff's protected activity.

If the adverse conduct closely followed the protected activity, it could strengthen the inference of causation; conversely, a longer temporal proximity might weaken it. Close temporal proximity is not absolutely necessary, however, and plaintiff will be able to show—after sufficient discovery—that management officials were sufficiently motivated by Koch's protected activity, almost all of which was still pending in either in the administrative process or in the courts in 2003. It would make very little sense to suggest that the filing of a complaint, followed by one or several years of processing in the administrative process, necessarily means that management animus lessens or disappears. Common sense suggests that the continued existence of an open complaint— or in Koch's case, several complaints—is accompanied by continued management

animus. Because this goes to motive or state of mind, plaintiff absolutely must have some discovery to explore the state of mind of Donaty and the identity and state of mind of other involved management officials and human resource personnel.

## IV.    Difference in Age Between Koch and Rupert is Not Dispositive.

Defendant urges that since Rupert and Koch are separated by eight years, Koch cannot establish a case of age discrimination. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) only suggests that an inference of discrimination "can not be drawn from the replacement of one worker with another worker insignificantly younger." As this Circuit has described the *Consolidated Coin* test, the fact that an employer selected several older employees for a promotion and did not select the plaintiff "is not dispositive." *Forman v. Small*, 271 F.3d 285, 292 (D.C.Cir. 2001).

This is consistent with the policy guidance of the Equal Employment Opportunity Commission stating that where the age difference between the charging party and his/her comparator is not 'substantial' it is simply one piece of evidence that must be weighted along with all other evidence in determining whether there is reasonable cause, and describes a number of fact patterns where insubstantial age difference would not overcome a charge of age discrimination. *EEOC Notice No. 915.002* (9-18-96) (available at www.eeoc.gov/policy/docs/oconnor.html). Such fact patterns could include an employer's history of taking action against its oldest workers; where the slightly younger worker is less qualified; and if the slightly younger replacement was hired by someone other than, and outside the control of, and the person who fired the charging party. *Id.*

*Consolidated Coin*, moreover, involved the termination of an older employee who was replaced by a younger employee. In this case, however, Koch was not terminated in

17

favor of Rupert. Koch was not in direct competition with Rupert for a single loan repayment. The only valid comparison is between Koch and *all* other employees who received their loan repayments for the 2003 process.

## V.     Plaintiff Must Be Allowed Discovery to Establish That The Reimbursement Program Resulted in a Disparate Impact Upon Older Employees

Plaintiff also alleges that the student loan program operates in a manner as to adversely and disproportionately affect older employees.

This Circuit has never definitively recognized the existence of a disparate impact theory for federal sector employment. Apparently, it has not rejected it, either. Different district court judges have taken directly opposite views as to whether the federal government has waived its sovereign immunity for a federal sector disparate impact age discrimination claim.

In one unreported case, Judge Bates held that a federal employee's disparate impact case was not cognizable. *Silver v. Leavitt*, 2006 WL 626698 *13 (D.D.C. 2006). Judge Bates started his analysis by noting that nothing in the Supreme Court's *Smith v. City of Jackson* decision, 544 U.S. 228 (2005), finding the availability of disparate impact claims available under the private sector ADEA provision, 29 U.S.C. § 623, did not result in a waiver of sovereign immunity for such claims against the federal government employer. *Silver*, at *13. All the decisions by courts in this Circuit cited in *Silver*, however, predate the *Smith* decision. The one post-*Smith* decision cited by Judge Bates, *Breen v. Mineta*, 2005 WL 3276163 at *7 (D.D.C. Sept. 30, 2005) was later called into question by the same judge who issued it, Judge Roberts:

> An inquiry into whether § 633(a)(a) expressly waived the the sovereign immunity from suit must begin with the language of the statute itself. See *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241 (1989). Where the statute's language is

plain, a court is bound to "'enforce it according to its terms.'" Id. (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). The prohibition for federal employers is simple and sweeping.: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age..shall be made free from any discrimination based on age." 29 U.S.C. 633a(a). The statutory text does not limit or qualify the type of age discrimination that Congress prohibited for federal employers, or limit the theory or proof upon which a plaintiff may base a claim that a federal employer violated § 633a(a). To the contrary, the prohibition extends expressly to "any discrimination based on age." Id. (emphasis added).

*Breen v. Peters*, 2007 WL 60900 *4 (D.D.C. January 8, 2007).

Judge Roberts then referred to another case, *Lagerstrom v. Mineta*, 408 F.Supp.2d 1207, 1212 (D.Kan. 2006), as providing conclusive rationale for the existence of the disparate impact theory for the federal employee: "The cogent and compelling analysis in Lagerstrom dispels any serious doubt that "[t[he text of Section 633a broadly prohibits any discrimination based on age, and ...[that] Congress explicitly waived sovereign immunity for both intentional discrimination and disparate impact claims." *Lagerstrom*, 408 F.Supp.2d at 1213.[8] *Breen v. Peters*, 2007 WL 60900 at *4.

The D.C. Circuit, in discussing the availability of a retaliation claim under the federal age discrimination provision, has very strongly called for the broadest possible approach to § 633a: "Nothing in the plain language of § 633a suggests that Congress intended the federal workplace to be less free of age discrimination than the private

---

[8] A compelling argument in favor of availability of a disparate impact theory can be found in the law review article by Keith R. Fentonmiller, The Continuing Validity of Disparate Impact Analysis for Federal-Sector Age Discrimination Claims, 47 *Am.U.L.Rev.* 1071 (1998). Note that this article was published before the Supreme Court decision finding the availability of disparate impact theory for private sector age claims. The rationale of Fentonmiller's article is even stronger after *Smith v. City of Jackson*.

19

workplace. To the contrary, Congress's actions show that it intended its mandate to reach more broadly in the federal sector than in the private sector...Sections 633a and 2000e-16 use identical language in creating a cause of action for federal employees under the ADEA and Title VII, respectively, and thus should be interpreted consistently."

The Circuit's approach to § 633a weighs strongly in favor of adopting the disparate impact analysis to the same degree it is available under Title VII and the private sector ADEA provision, § 623.

Because statistical evidence is crucial to an analysis of disparate impact analysis, plaintiff must be given the opportunity to discover the age distributions for comparators. Further, it appears that the program, as conceived, is inherently discriminatory based on age, since it bestows an employment benefit based on age distribution--disproportionately upon younger employees--without evidence that it achieves the objective of stemming attrition. Further discovery including access to statistical evidence is necessary for Koch to establish his prima facie case. Accordingly, defendant's motion for summary judgment is premature.

\*       \*       \*

In summary, we note once again *Celotex*, wherein the Supreme Court explained that there must be "adequate time for discovery" to determine whether summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The D.C. Circuit embraced this requirement in *Nixon v. Freeman*, 670 F.2d 346, 262 (D.C. Cir.1982), stating that a "decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision." Another court in this Circuit noted in *Mayfield v. Meese*, 704 F.Supp. 254, 256 n. 5 (D.D.C. 1988):

> As a general rule, courts generally refrain from granting summary judgment motions when confronted with an inadequate or incomplete record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (consideration of summary judgment motions appropriate only after adequate time for discovery). So too in discrimination suits, a favorable ruling on a summary judgment motion is inappropriate when questions of material fact exist concerning a discriminatory pattern or practice. *McKenzie v. Sawyer*, 684 F.2d 62, 67 (D.D.C.1982); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2732.2, p. 361 (1983). Cases requiring a determination regarding motive or intentions are particularly unsuitable for summary judgment. 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2732.2, p. 351.)

As stated immediately above, where the motive or intent of an alleged discriminating official is an issue, summary judgment is unsuitable. Here, there are at least two issues of motive or intent: (1) Mr. Donaty's actions in not recommending Koch for the student loan repayment, and (2) the actions of unnamed Office of Human Resource officials in ratifying Donaty's decision. In each of these issues, the SEC's management actor's motivations are a critical component of the factual basis for this action. As such, plaintiff's concurrently filed motion under Rule 56(f) ought to be granted, and, the current dispositive motion of defendant must be denied as premature.

## VI.    Defendant Misstates the Nature of Koch's Lawsuit by Asserting That This Lawsuit Duplicates the Claims of A Suit Filed in 2002.

Defendant argues essentially that this instant lawsuit is identical to the suit, *Koch v. Cox*, C.A. 02-1492 (D.D.C.) (PLF). Because of the similarity of "claims 6-11" in this instant suit to claims in the 2002 suit, Defendant Cox argues the allegations should be dismissed. In a legal sleight of hand, defendant converts mere statements of underlying facts into "claims" or "causes of action." Nothing could be further from the truth.

Such "claims," in both suits, are, at least in this suit, simply recitals of facts concerning Plaintiff's improper work assignments. Such assignments violate basic principles of personnel law that work assignments must bear some reasonable

21