UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RANDOLPH S. KOCH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-0656 PLF |
| | ) | |
| CHRISTOPHER COX, | ) | |
| CHAIRMAN, | ) | |
| U.S. SECURITIES AND | ) | |
| EXCHANGE COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S RULE 56(F) MOTION**

**PRELIMINARY STATEMENT**

Plaintiff concedes in his Opposition to Defendant's Motion to Dismiss and for Summary Judgement ("Opposition")[1], that "[t]he only claim in the instant case relates to the SEC's rejection of Koch's participation in the [2003] student loan program." <u>See</u> Opposition at 23. Moreover, plaintiff cannot dispute that in order to be eligible for the student loan repayment program, Assistant Director, Division of Investment Management, Frank Donaty, was required to certify that plaintiff: (1) was an

---

[1] Plaintiff mis-characterizes Defendant's Motion as "Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment." Opposition at 1. He then tries to argue that because defendant attached affidavits and exhibits to its Motion to Dismiss, it should be denied and should be converted to a Motion for Summary Judgment. <u>Id</u>.at 3-5. However, defendant's dispositive motion is one to dismiss certain claims and one for summary judgment as to another claim. Accordingly, contrary to plaintiff's claims, the motion to dismiss should not be converted into a motion for summary judgment.

employee with high or unique qualifications that met a special Agency need; (2) was likely to leave the Agency if he did not participate in the Program; or (3) was an employee whose retention was essential.  Plaintiff also had to satisfy one or more of the four criteria for participation in the program set forth in Article 25 of the Agency's Collective Bargaining Agreement ("CBA").  See CBA, Art. 25, attached to Defendant's Motion to Dismiss and for Summary Judgment ("Def. Motion") as Exh. A, Tab 2.  Finally, plaintiff cannot dispute that between 1998 and 2002, he was rated "Unsatisfactory" on one occasion and "Fully Successful" four times, while the only successful applicant for the student loan repayment program from the Office of Disclosure and Review, "KCR" has received nothing but "Outstanding" ratings during his employment with the Agency.

Faced with these straight-forward undisputed facts concerning his exclusion from the 2003 student loan repayment program, plaintiff first offers his personal assessment that "in comparison to other employees, he possesses unique, superior, and extraordinary qualifications."  Opposition at 8.  No evidence, however, is cited to support such a claim.  See generally Opposition.  Next, plaintiff asserts that he should be permitted to attack the legality and validity of the annual performance reviews that he and KCR received during the relevant period. Opposition at 26-27.  Finally, plaintiff claims that he should be entitled to wide-ranging discovery into the Agency's entire 2003

student loan repayment program in order to develop statistical evidence of disparate impact.  Opposition at 18-20.

Plaintiff's voluminous Opposition and contemporaneous Rule 56(f) Motion should be denied.  Plaintiff's personal assessment of his own value to the Agency's mission or the value of his co-workers' contribution is irrelevant to Mr. Donaty's decision at issue in this case.  Nor may plaintiff use the present lawsuit to re-litigate the validity or legality of his annual performance reviews.  Indeed, even if plaintiff somehow were able to establish through discovery that his performance should have been rated more favorably between 1998 and 2002, it still would fail to establish that plaintiff met the stringent criteria for inclusion in the 2003 student loan repayment program.  Finally, plaintiff cannot establish a disparate impact claim as a matter of law.  Consequently, plaintiff's assertion that he is entitled to wide-ranging discovery to develop statistical evidence into the Agency's 2003 student loan repayment program is without merit.

In sum, all of the facts necessary to decide the present issue are before the Court, and plaintiff has failed to articulate any material fact precluding summary decision in favor of defendant or which could be gained through discovery in this case.

**ARGUMENT**

I.    **Plaintiff's Assessment of His Own Performance or the
      Performance of His Co-Workers is Irrelevant.**

Defendant asserted in his initial Motion that one of the
reasons Mr. Donaty rejected plaintiff's application for the 2003
student loan repayment program was that Mr. Donaty could not
certify that plaintiff had "high or unique qualifications that
meet a special need within the agency."  See EEO Testimony of
Frank Donaty pp. 5-6, 11, attached to Def. Motion as Exh. C.  In
making this determination, Mr. Donaty noted that plaintiff had
received one unsatisfactory rating and four fully successful
ratings over the previous five years.  Id.  Mr. Donaty also
observed that even when plaintiff had been rated fully
successful, his annual reviews addressed multiple performance
deficiencies, including plaintiff's repeated failure to comply
with deadlines for submitting comments on new registration
statements and post-effective amendments.  See Def. Motion Exh. C
at 11; Exh. A at ¶ 7.

For example, in plaintiff's 1998 performance evaluation, Mr.
Donaty stated:

> Mr. Koch does not manage the timeliness of the comment
> process very well.  The Office's policy is to give
> comments on new registration statements and on post-
> effective statements in 30 and 45 days, respectively.
> During the rating period Mr. Koch gave comments on new
> registration statements in an average of 39 days.
> Although he gave comments on post-effective amendments
> in a average of 42 days, he gave comments on 28 of the
> 50 amendments he reviewed during the rating period
> after 45 days.

Id. at Exh. A, ¶ 7.

In 1999, Mr. Donaty reiterated that plaintiff "did not manage his time deadlines very well" and "too often filings were submitted late to the branch chief for review."  In addition, Mr. Donaty noted that plaintiff "missed many issues and comments related to the new revised form N-1A" and that his "filings required close scrutiny by his branch chief." See Def. Motion at 12; Exh. C at p. 11, Exh A. at ¶ 7.

In 2000, plaintiff's rating fell to unacceptable.  In that review, it was noted:

> Mr. Koch gave comments on only 3 new registration statements, one of which was for a limited or selective review.  His average time to give comments was 70 days.  For post-effective amendments, during this period Mr. Koch received a total of 32 filings, on which he gave comments on only 7, 3 of which he gave only limited review.  His average time to give comments was 60 days.  For the period May 1, 1999 to April 30, 2000, Mr. Koch's average time to give comments on new registration statements was 76 days, and 59 days for post effective amendments.

Id., Exh. A, ¶ 7 & Tab 7, p. 14.

By comparison, KCR, the sole candidate that Mr. Donaty recommended for the 2003 student loan repayment program, received an "Outstanding" on each of his annual performance reviews with the Agency.  See Def. Motion Exh. A at ¶ 11.  KCR was described as a "highly qualified member of the Division of Investment Management's staff" who "participates, leads and plays a critical role in reviewing the annual reports to shareholders,

registration statements and other filings of investment companies and business development companies." See Def. Motion Exh. A at ¶¶ 9-10; Exh. C at pp. 12-13. KCR was further recognized for his skill in analyzing and assisting others with difficult or novel accounting issues, training staff, and performing non-supervisory duties of a branch chief. Id.

Despite the extensive documentary evidence distinguishing plaintiff's performance from KCR's performance over the last several years, plaintiff asserts in his Opposition and Rule 56(f) Motion that he "possesses qualifications that far exceed any other employee in the office in which he works" (Opposition at 6) and seeks discovery to establish that "in comparison to other employees, he possesses unique, superior and extraordinary qualifications." Opposition at 8.

In support of this glowing self-assessment, plaintiff notes that he attended Georgetown University Law Center and turned down offers from highly respected law firms following his graduation in 1983, while KCR attended the University of Baltimore School of Law. Opposition at 6-7. Plaintiff also suggests that his long-time supervisor, Frank Donaty, is not qualified to assess his performance and questions whether KCR "has the work ethic and work style to survive in a private law firm or big accounting firm." See Opposition at 6-7, 10.

It is well established, however, that a plaintiff's self-serving assessment of his own qualifications or his performance in comparison to other employees is irrelevant for the purposes of withstanding summary judgment.  Waterhouse v. District of Columbia, 124 F. Supp.2d 1, 5 (D.D.C. 2000)("plaintiff's self-serving statements as to her competence or her superior performance do not serve to raise material issues of fact regarding defendants' proffered reasons for plaintiff's termination."); Vasilevsky v. Reno, 31 F. Supp.2d 143, 147 (D.D.C. 1998)("plaintiff's own opinion of the relative merits of her qualifications is not relevant"); Toulan v. DAP Products, Inc., 2007 WL 172522, *9 (D. Md. 2007)("Plaintiff's own assertions that at all times her job performance was satisfactory do not constitute competent evidence.  The self-perception of a plaintiff as to her qualifications ... is irrelevant; what matters is 'the perception of the decision maker.' "), quoting Chyu v. Maryland Dept. of Health & Mental Hygiene, 198 F. Supp.2d 678, 683 (D. Md. 2002); Sublett v. John Wiley and Sons, Inc., 463 F.3d 731, 735 (7th Cir. 2006) ("'An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability.' "), quoting Jackson v. E.J. Brach Corp., 176 F.3d 971, 985 (7th Cir. 1999).

Plaintiff's Opposition and Rule 56(f) Motion fails to demonstrate that the annual reviews relied upon by Mr. Donaty depict anything other than an accurate description of his job

performance.  For example, in his Statement of Disputes,
Objections, and Responses to Defendant's Statement of Material
Facts Not In Genuine Dispute ("Plaintiff's Statement"), plaintiff
fails to contest defendant's assertion that he consistently
failed to meet the Agency's deadlines for submitting comments on
new registration statements and post effective amendments or that
his work contained the numerous other deficiencies articulated by
Mr. Donaty.  Rather, plaintiff merely attacks his annual reviews
as unjustified or unfair and attempts to downplay the
significance of his performance deficiencies.  For instance,
plaintiff attributes his unacceptable annual rating in 2000 to
the fact that he failed "to update a database, not on substantive
work assignments, analysis and writing, or any qualities that
would relate to [his] attractiveness to an outside legal
employer."  See Plaintiff's Statement, at 4.

     Plaintiff cannot rely solely upon self-serving statements
concerning his alleged superior performance and he has failed to
present any evidence which, if true, would refute Mr. Donaty's
reasons for rejecting plaintiff's application for the 2003
student loan repayment program.  At most plaintiff indicates a
desire to relitigate the legitimacy of his performance
evaluations upon which Mr. Donaty's decision was based.  However,
as demonstrated infra at 9-12, he should be precluded from doing
so. Therefore, further discovery is unnecessary and summary
judgment should be entered in favor the Agency.  See Hunt v.

District of Columbia, 41 F.Supp.2d 31, 38 (D.D.C. 1999)
(Friedman, J.) (Denying plaintiff's Rule 56(f) motion and
granting summary judgment to employer where plaintiff failed
adequately to allege her employment discrimination and
retaliation claims and where the issues over which plaintiff
sought discovery would not be relevant to the Court's decision);
Richardson v. National Rifle Assoc., 879 F. Supp. 1, 3 (D.D.C.
1995) (Friedman, J.) (Denying Rule 56(f) motion where plaintiff
failed to describe what would be obtained from additional
discovery or how additional information would raise any genuine
issues of material fact.)

## II.    Plaintiff Cannot Use The Present Case to Re-Litigate The Legitimacy Of His Annual Performance Reviews.

In an effort to overcome the impact that his negative annual
performance reviews had in influencing Mr. Donaty's decision,
plaintiff follows his long, familiar pattern of seeking to re-
litigate issues that he has raised unsuccessfully in numerous
prior filings with the Merit Services Protection Board ("MSPB"),
Equal Employment Opportunity Commission ("EEOC") and the Federal
Courts.  Specifically, Plaintiff's Opposition and Rule 56(f)
Motion demands that he be permitted to revive previous challenges
to his annual performance reviews and to take broad-ranging
discovery in an effort to demonstrate that these past reviews
were illegitimate or unlawful.  See Opposition at 26 ("[I] must
have the right to rebut the Defendant's use of those performance

evaluations as valid and lawful.")  As illustrated below, however, plaintiff's long history of performance deficiencies is well documented in his previous legal actions and there is no basis to reopen such claims to further discovery or litigation in order to resolve the discrete decision by Mr. Donaty which is at issue in this case.

On October 16, 2002, the Court of Appeals for the Federal Circuit upheld the MSPB's dismissal of plaintiff's whistleblower's claim against the Agency.  In that case, plaintiff challenged a "minimally satisfactory" performance rating that had been issued by Mr. Donaty in 1994, as well as a counseling memorandum notifying plaintiff that he had failed to perform his duties in a timely fashion and that his failure to improve his performance could jeopardize his continued employment with the Agency.  In affirming the MSPB's dismissal, the Federal Circuit stated:

> Substantial evidence also supports the administrative judge's alternative ruling that there is clear and convincing evidence that Mr. Koch would have received the same performance rating regardless of his whistleblowing activity, and that Mr. Koch's alleged whistleblowing was not a contributing factor in his performance appraisal.  The evidence shows that Mr. Koch had problems in completing his work on a timely basis, that his poor performance rating was based upon his timeliness problems and that two other individuals in his unit were given similar poor performance ratings based on timeliness issues . . .  The performance counseling memorandum explained to Mr. Koch that, despite repeated warnings about his failure to meet deadlines, his performance had demonstrated "little if any, improvement."  The memorandum provided specific examples of deficient performance and cautioned that

"[u]nless you make immediate and profound improvements
in your performance, it will be necessary to discharge
you."

Koch v. Securities and Exchange Commission, 48 Fed. Appx.

778, 787-88 (Fed. Cir. 2002).

In 2003, the SEC issued a Final Agency Decision dismissing

claims that it discriminated against plaintiff on the basis of

his age, sex, race and disability when he received lower

performance ratings than he believed he deserved.  Included in

that case were allegations that plaintiff's supervisor harassed

him, increased his workload, and failed to accommodate his

alleged disabilities.  This Court dismissed plaintiff's

subsequent complaint (00-2097) for failure to exhaust

administrative remedies and rejected plaintiff's Rule 56(f)

motion to engage in discovery.  The Court's opinion subsequently

was upheld by the Court of Appeals for the District of Columbia.

See Koch v. Donaldson, 260 F. Supp.2d 86 (D.D.C. 2003) (Friedman,

J.), aff'd, 2004 WL 758957 (D.C. Cir. Apr. 7, 2004).

In addition, plaintiff currently has an another pending case

before this Court (Koch v. Donaldson, Civil Action No. 02-1492)

in which he once again attacks the legitimacy of his performance

reviews, work assignments and position description.  As in Koch

v. Donaldson (00-2097), Civil Action No. 02-1492 also alleges

discrimination based on age, religion and disability and

retaliation for prior EEO activity.  Plaintiff deposed Mr. Donaty

in connection with case 02-1492 and had ample opportunity to

-11-

question him about the basis of plaintiff's performance ratings
and work assignments, which were the central issues in that case
and which support Mr. Donaty's current refusal to certify
plaintiff for participation in the 2003 student loan repayment
program.

Finally, in addition to the foregoing cases, there is a
complete Report of Investigation that was compiled in connection
with plaintiff's current allegations, which has been provided to
plaintiff, which includes the investigative testimony of
plaintiff and Mr. Donaty as well as all of the relevant
documentation relating to Mr. Donaty's decisions concerning the
2003 student loan repayment program.

Given the extensive administrative and legal proceedings
documenting plaintiff's history of performance deficiencies, his
current demand that he be permitted yet another opportunity to
engage in additional duplicative, expensive, time-consuming
discovery over the legitimacy and accuracy of his past annual
performance reviews (including the impact of the Agency's efforts
to accommodate his alleged disabilities, work load levels, etc.
on his annual ratings) should be rejected.  These matters have
been fully litigated on multiple occasions and soundly rejected
or are currently pending before this Court.  There are simply no
facts that plaintiff could elicit during discovery in this case
that would permit a reasonable trier of fact to conclude that
plaintiff "is deemed to have high or unique qualifications that

meet a special need within the agency" or that Mr. Donaty's reliance on plaintiff's well documented performance history was a pretext for unlawful discrimination or retaliation as alleged in the present Complaint.  Accordingly, Plaintiff's Rule 56(f) Motion should be denied and summary judgment entered on behalf of the Agency.

**III.  Plaintiff Has Failed To Allege Any Facts Tending To Show That Mr. Donaty's Conclusion That Plaintiff Did Not Meet Any Of The Other Criteria For Participation in the Student Loan Repayment Program Was Incorrect or Unlawfully Motivated.**

Even if plaintiff were permitted to re-litigate the accuracy or legitimacy of the annual performance reviews considered by Mr. Donaty, neither Plaintiff's Opposition nor his Rule 56(f) Motion articulate how discovery would establish that: (a) he was "considered likely to leave the federal government" if he did not participate in the 2003 student loan repayment program; or (b) that his "retention is deemed essential."

Plaintiff did not, in fact, leave the Agency after being denied participation in the 2003 student loan repayment program. Moreover, neither Plaintiff's Opposition nor his Rule 56(f) Motion assert that he has been offered alternative employment opportunities or that he has even sought out such opportunities. Plaintiff has held the same grade 12 Financial Analyst position since joining the Agency, and he has presented no evidence that his current skills are of particular interest to any non-government employers.

It is undisputed that plaintiff was informed in a memorandum dated July 31, 2003 that he was not being recommended for inclusion in the student loan program. Def. Motion, Exh. A at ¶ 4. Now almost four years later, plaintiff is still employed by the Agency. Thus, Mr. Donaty's conclusion that plaintiff was not likely to leave the Agency has been borne out by the undisputed fact of the passage of almost four years. Moreover, plaintiff points to **no** evidence that he ever was or is now likely to leave the Agency based on the denial of his student loan application. See generally Opposition. No discovery is needed on this issue; such facts would be within plaintiff's knowledge and control yet none were presented.

Because a declaration that the applicant is likely to leave the federal government if student loan benefits are not received is one of the requirements of certifying an applicant for the entry into the student loan program, Def. Motion, Exh. A, ¶ 5; Exh. D, attached, an issue plaintiff does not dispute, and because plaintiff points to no evidence that such a conclusion should have been reached by Mr. Donaty in connection with plaintiff's application, this issue alone provides a basis for this Court to rule in defendant's favor in connection with defendant's denial of plaintiff's 2003 student loan application.

In addition, it is also undisputed that a certification must include a declaration that plaintiff's retention was "essential" to the Agency. Def. Motion, Exh. A at ¶ 5. Yet plaintiff has

-14-

pointed to no evidence upon which a reasonable fact-finder could conclude that plaintiff's continued employment with defendant is "essential" to the Office of Disclosure and Review.  <u>See</u> <u>generally</u> Opposition.

Thus, because plaintiff has failed to contradict Mr. Donaty's assertion that he could not certify that plaintiff was likely to leave the Agency if denied participation in the student loan program, or that plaintiff's retention was "essential" to the needs and work of the Office of Disclosure and Review, summary judgment is appropriate for defendant.

**IV.  Plaintiff Cannot Establish a Disparate Impact Case As a Matter of Law.**

Plaintiff also asserts that summary judgment is premature because he needs time to develop statistical evidence into whether defendant's student loan repayment program created a disparate impact against employees who are more than 40 years of age.  <u>See</u> Opposition at 20 ("Because statistical evidence is crucial to an analysis of disparate impact analysis, plaintiff must be given the opportunity to discover the age distributions for comparators.").  In support of this contention, plaintiff observes that this jurisdiction has never definitively ruled that federal employees are precluded from bringing disparate impact claims under the ADEA.  <u>See</u> Opposition at 18-20.

Regardless of whether this jurisdiction ultimately determines that disparate impact claims are permissible against

the federal government, plaintiff cannot establish that the
student loan repayment plan implemented by the Agency created a
disparate impact under the ADEA.

First, this program is a government-wide benefit adopted by
Congress to encourage recent graduates with significant student
loans, to work for the federal government.[2]  Second, the program
is available to any employee of any age who wishes to
participate, not just persons under the age of 40.  Plaintiff's
complaint is thus based on his incorrect inference that defendant
is responsible for this program.  His allegation similarly
incorrectly assumes that the existence of this program
constitutes unlawful discrimination against older workers.

Such a claim was recently addressed by this Court in Rosell
v. Kelliher, 468 F. Supp.2d 39 (D.D.C. 2006)(Leon, J.), aff'd
Rosell v. Kelliher, 2006 WL 4056985 (D.C. Cir. 2006), rehearing
en banc denied (Jan. 24, 2007).  In Rosell, the plaintiff alleged
that a student loan abatement program offered by the Federal
Energy Regulatory Commission to encourage recent graduates with
significant student loans to work for the federal government
created a disparate impact against older workers by "squeezing

_____

[2] See 5 C.F.R. Part 537, the Office of Personnel
Management's implementation of 5 U.S.C. § 5379, as amended, which
authorizes agencies to establish a program under which they may
agree to repay (by direct payment on behalf of the employee) all
or part of any outstanding federally insured student loan or
loans previously taken out by a candidate to whom an offer of
employment has been made, or a current employee of the agency, in
order to recruit or retain highly qualified personnel.

out" older, more experienced auditors.  The Court rejected the

plaintiff's disparate impact claim, noting:

> Student loan abatement and discounted loan benefit
> programs are in no way "unusual employment incentives"
> aimed at disadvantaging older workers.  These programs
> are government-wide benefits adopted by Congress to
> encourage recent graduates with significant student
> loans to work for the federal government.  See 5 C.F.R.
> Part 537.  Moreover, these programs are available to
> all employees who wish to take advantage of them – not
> just to persons under forty.

Rosell, 468 F. Supp.2d at 49.

     As in Rosell, defendant's student loan repayment program

also was adopted under the authority of 5 C.F.R. Part 537 "to

attract or retain highly qualified professional, technical and

administrative individuals by assisting them in repaying their

outstanding federally insured student loans."  See Exh. A at ¶ 2.

Also like Rosell, defendant's student loan repayment program is

open to any employee who has a qualifying federally insured loan,

regardless of age or any other protected classification.

Accordingly, the broad "statistical evidence" sought by plaintiff

in this case is irrelevant because as a matter of law he cannot

establish a disparate impact claim with regard to defendant's

student loan repayment program.

## CONCLUSION

     For the foregoing reasons, and those set forth in Defendant's

Motion to Dismiss and for Summary Judgment, defendant's

dispositive motion should be granted and this matter should be

dismissed.   Plaintiff's Motion for 56(f) discovery also should be denied.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226


OF COUNSEL:

Paul R. Brockmeyer
Senior Counsel
United States Securities and Exchange Commission
Office of the General Counsel

CERTIFICATE OF SERVICE

I certify that a copy of defendant's reply brief was served
upon plaintiff by U.S. mail, addressed to:

                    Mr. Randolph Koch
                    7701 Woodmont Ave., Apt. 807
                    Bethesda, MD 20814

on this 30th    day of March, 2007


                    _____
                    MARINA UTGOFF BRASWELL, D.C. Bar #416587
                    Assistant United States Attorney
                    United States Attorney's Office
                    Civil Division
                    555 4th Street, N.W.
                    Washington, D.C. 20530
                    (202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
RANDOLPH S. KOCH,                   )
                                    )
          Plaintiff,                )
                                    )
          v.                        )  Civil No. 06-0656 PLF
                                    )
CHRISTOPHER COX, CHAIRMAN,          )
   U.S. SECURITIES AND              )
   EXCHANGE COMMISSION,             )
                                    )
          Defendant.                )
_____)
```

ORDER

Upon consideration of defendant's motion to dismiss and for summary judgment, plaintiff's responding opposition and plaintiff's motion for Rule 56(f) discovery, and defendant's opposition to that motion, and the entire record in this case, and it appearing to the Court that the granting of defendant's motion and the denial of plaintiff's motion would be just and proper, it is by the Court this _____ day of _____, 2007,

ORDERED that plaintiff's Rule 56(f) motion be, and it is, denied; and it is further

ORDERED that defendant's motion be, and it is, granted; and it is further

ORDERED that this case be, and it is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Marina Utgoff Braswell
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

Randolph Koch
7701 Woodmont Ave., Apt. 807
Bethesda, MD 20814