UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAY 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| RANDOLPH S. KOCH, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Civil Action 06-0656 (PLF)** |
| | ) | |
| CHRISTOPHER COX, | ) | |
| **Chairman, U.S.Securities** | ) | |
| **and Exchange Commission,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 56(F) MOTION

Plaintiff Randolph S. Koch hereby files his Reply Memorandum pursuant to

LCvR 7(d), to *Defendant's Opposition to Plaintiff's Rule 56(f) Motion. ("Def. Opp.")*.

At the outset, Plaintiff wishes to clarify certain matters with respect to the history

of filings.  Plaintiff experienced some confusion in understanding exactly which portions

of Defendant's initial filing, filed on October 12, 2006, and styled *Defendant's Motion to*

*Dismiss and For Summary Judgment (Def. Motion),* were the motion to dismiss and

which were the summary judgment motion.  While it was clear that Defendant's second

argument, starting on page nine of *Def. Motion* is a Motion for Summary Judgment, it is

not so clear to Plaintiff that Defendant's First Motion, a motion to dismiss under Rule

12(b)(6), is not to be treated as a Motion for Summary Judgment as well.  Rule 12(b)

provides, in pertinent part, that "[i]f, on a motion asserting the defense number

(6)…matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Because Defendant refers to matters involving another lawsuit, it appears that "matters outside the pleading are presented." Accordingly, Plaintiff believes that this first motion also may be treated as one for summary judgment.

Nevertheless, plaintiff wishes to make clear that he has not filed an opposition with respect to the second motion filed by Defendant. Such motion relates to Part II of *Def. Motion*, wherein Defendant seeks summary judgment on the "remaining allegations contained in the complaint."

Because a request for summary judgment prior to discovery is premature, plaintiff has only file a Rule 56(f) Motion alerting the Court that discovery is necessary before Plaintiff can present an opposition. This reply memorandum addresses Defendant's Opposition to Plaintiff's Rule 56(f) motion.

Throughout Defendant's Opposition, we are presented with the same arguments that Defendant proffered in his Motion to Dismiss regarding whether there is a dispute about Plaintiff's performance, whether Plaintiff can prove that he did not meet the criteria for the program, whether Plaintiff is "re-litigating" previously-litigated claims, and whether plaintiff can argue a case for disparate impact age discrimination. Defendant argues that there is no dispute over any of these (or any other) issues, and that summary judgment is appropriate now.

2

Contrary to Defendant's arguments, there is a dispute about each and every issue, or there is legitimate and compelling basis for Plaintiff's argument that reasonable discovery is necessary before the case can be decided on the merits.

Plaintiff asserts that the performance appraisals were illegal since they were based improperly and unlawfully assigned work. Defendant had no authority to assign attorney's work to a Financial Analyst—yet that is all its managers did. After assigning such illegal work, Defendant cannot purport to then evaluate the Financial Analyst using the same standards and criteria it would apply to an attorney—yet that is what the managers did. Further, Plaintiff can show—after discovery—that the work assignments were of the type normally and routinely assigned to attorneys classified at least two grades higher, and in some cases, making a salary more than 50 percent higher than Plaintiff's salary. Plaintiff needs discovery to prove this entire pattern of illegality, and that the motivations of Defendant's managers were rooted in discrimination and retaliation for Plaintiff's EEO activity.

Plaintiff needs to discover all position descriptions, all work assignments, all performance appraisals, and needs the deposition testimony of Plaintiff's supervisors and the appropriate classification specialists in the SEC's Office of Human Resources (OHR). Some years ago, Plaintiff wrote an inquiry to Jayne Seidman, then director of what is now the SEC's OHR, inquiring as to whether the agency had concrete criteria and guidelines for assigning work based on proper grade level. Ms. Seidman, responded by saying that the agency did have such guidelines, but failed to divulge them to Plaintiff. Plaintiff needs to discover this information, either through interrogatory, document requests and/or deposition testimony.

Despite all of Defendant's repeated assertions that Plaintiff has provided "no evidence" to rebut what he claims to be "undisputed" proof of inadequate performance, it is Plaintiff who has provided absolutely no evidence to prove that the work assignments were lawful, that the performance appraisals were proper and lawful, or that Donaty's bald and subjective assertions of Plaintiff's deficiencies or Kevin Rupert's star qualities had any basis in reality.

It is Defendant who has an almost completely monopoly on all the information: the documents, the data and the witnesses. Defendant, however, presents nothing more than unsupported assertions and contentions. Plaintiff is entitled to reasonable discovery to develop his case and challenge the assertions and contentions. As Plaintiff's Rule 56(f) motion stated, Plaintiff's need for discovery is well-supported by controlling authority in this Circuit.

From discussion of Plaintiff's alleged inability to dispute the propriety of his performance appraisals, Defendant leaps to more bald (and unsupported) assertions, that even if Plaintiff could prove that his performance should have been rated more favorably between 1998 and 2002, Plaintiff still could not establish that he met the stringent criteria for inclusion in the 2003 student loan program, that plaintiff cannot establish a disparate impact program as a matter of law, and that plaintiff is not entitled to discovery to develop statistical evidence into the denial of the plaintiff's application for the student loan program.

Plaintiff will address these meritless contentions. It is clear, moreover, that this Court should not accept Defendant's erroneous argument that all the necessary facts are before the Court.

4

## ARGUMENT

### I.    Defendant Misleads the Court in Asserting that Plaintiff's Assessment of His Own Performance or the Performance of His Co-Workers is Irrelevant.

Plaintiff respectfully requests that the Court keep in mind that Plaintiff is not—at this point—launching his challenge to Defendant's arguments about Plaintiff's performance or comparators' performance; he is only pointing out certain legitimate disputes regarding the underlying facts—facts which needed to be explored more fully through discovery.

Plaintiff is entitled to show—through development of his case through discovery—that his performance was far better than that asserted by Defendant, or that Defendant's contentions about Plaintiff's performance are erroneous, based upon unlawful assignments or criteria, and were also the result of unlawful discrimination or retaliation.

Plaintiff must have the opportunity to examine and review all relevant documents relating to the work assignments and appraisals, including tracking databases, copies of work assignments and work product, position descriptions, position classification analyses, as well as deposition testimony of Richard Pfordte, Frank Donaty, and perhaps others in his own division or the Office of Human Resources. Plaintiff must be given the opportunity to examine motive, which is particularly relevant in a case with so many subjective assertions being advanced by Defendant, as in many cases involving discrimination and retaliation. Plaintiff also needs to discover what he has long believed to be the case: that he has been assigned a disproportionately heavier workload than

others in his branch. Plaintiff can only do this through discovery of the tracking database

for the entire period cited by Donaty as the basis for his rejection of Koch's application.[1]

Plaintiff also needs to discover other documents relating to his requests for Family

and Medical Leave, and whether Plaintiff's 1999 and 2000 evaluations violated his rights

under that statute. Plaintiff often refused to grant or delayed grants for leave requested

pursuant to that statute. Plaintiff assets—and can prove after discovery—that Defendant

illegally held Plaintiff responsible for work assignments while he was on FMLA leave or

should have been granted FMLA leave.

The Court should grant discovery so that Koch can establish that other

employees, including at least two in Koch's own work area, Robert Tait and Larry

Friend, at times suffered serious illness but were not penalized for work not completed.

Plaintiff personally observed management accommodating Tait's serious illness by

reassigning his work; Plaintiff believes management treated Larry Friend in a similar

manner. Yet when Plaintiff was seriously ill, or had a serious illness in the family, he

was penalized despite the protections he should have received from the Family and

Medical Leave Act. Further, Plaintiff can prove that a major motivation in denying

---

[1]       Courts have sometimes been reluctant to find heavier workload itself a
discriminatory violation, without "some other adverse change in the terms, conditions, or
privileges of employment." *Mack v. Strauss,* 134 F.Supp.2d 103, 113-14 (D.D.C. 2001),
cited in *Tsehaye v. William C. Smith Co., Inc.,* 402 F.Supp.2d 185, 194 (D.D.C. 2005).
Nevertheless, such a material adverse employment action need not be shown in the case
of retaliation, so a retaliatory increase in workload or a retaliatory refusal to decrease
workload could be sufficient. The workload increase need only dissuade a reasonable
employee from making or supporting a charge of discrimination. *Burlington Northern &
Santa Fe Railway Co. v. White,* ___U.S.___, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
Further, a refusal to comply with an accommodation request in the form of a decrease in
workload to a level consistent with that assigned to other employees could also make out
a violation of the Rehabilitation Act of 1973.

Plaintiff Family and Medical Leave was animus over Plaintiff's protected EEO activity. Plaintiff can develop this argument with discovery.

Defendant goes on to cite a number of cases for the proposition that a plaintiff's assertions of his own qualifications or his performance in comparison to other employees are irrelevant for the purpose of withstanding summary judgment. Contrary to Defendant's assertions, Plaintiff is not seeking to prove his case solely on his own self-assessment; rather, he seeks discovery to prove based on evidence and testimony that will be available from discovery.

In virtually every case cited by the Defendant, the complaining party could offer no other meaningful proof of discrimination after discovery. In this case, after discovery, Plaintiff Koch will be able to offer many proofs beyond assertions of his own qualifications.[2]

Defendant cites *Waterhouse v. District of Columbia*, 124 F.Supp.2d 1, 5 (D.D.C. 2000). Waterhouse noted that "plaintiff cannot establish pretext *simply* based on her own subjective assessment of her own performance." Id. [emphasis added]. Upon reading *Waterhouse*, it becomes abundantly clear that, notwithstanding full discovery, plaintiff could come up with no additional evidence which would establish a material dispute regarding her job performance. In this case, however, Defendant seeks to deny Plaintiff's opportunity to prove his case. Plaintiff simply seeks the same opportunity afforded the

---

[2] Defendant distorts the actual information presented by Plaintiff in his Rule 56(f) motion. Plaintiff presented information demonstrating that there is a genuine issue concerning Donaty's assessment of Koch's qualifications, for example, by illustrating the reality of the attractiveness to private sector employers of differing academic qualifications. This is not Koch's self-assessment. This is an area that needs to be further explored in discovery, and in particular, Koch needs to explore *Donaty's* knowledge of private sector attitudes and the value and legitimacy of his assessment of Koch's and Rupert's qualifications.

Waterhouse plaintiff. There is abundant evidence of discriminatory and retaliatory

motive: for example, during one outburst at Plaintiff some years ago, Frank Donaty

yelled at Plaintiff about "making a life's work of filing EEO complaints." Plaintiff needs

to explore this and other, similar statements which demonstrate management's animus

over Plaintiff's EEO activity. Contrary to the Waterhouse plaintiff, Koch will be able to

develop substantial evidence regarding his claims of retaliation and discrimination.[3]

Similarly, in *Vasilevsky v. Reno*, 31 F.Supp.2d 143, 147 (D.D.C. 1998), also cited

by Defendant, the situation is similar to *Waterhouse*, and much different from the

simplistic conclusion urged by Defendant.

Defendant cites parenthetically the statement, purportedly located at 31 F.Supp.2d

at 147, that "plaintiff's own opinion of the relative merits of her qualifications is not

relevant." Plaintiff could not locate such a statement on page 147 of the case, and

further, could only find the following statement, which is different from that quoted:

"Consequently, the plaintiff's opinions of the relative merits of her credentials as opposed

to those of the selected individuals are irrelevant." 31 F.Supp.2d at 150. This statement

should be placed in context, by reading it together with the immediately preceding

sentence: "'Unless the employer's choice of candidates can be shown to have been

tainted by unlawful discrimination, it must be allowed to stand, no matter how unwise it

may seem to the disappointed applicant.'" *Id. citing Skelton v. ACTION*, 668 F.Supp. 25,

---

[3]    Plaintiff notes that *Waterhouse* cited another case, *Saunders v. DiMario*, 1998
WL 525798 (D.D.C. August 14, 1998) (Friedman, J.). In that case, the plaintiff was
found to have established a prima facie case of age discrimination, where there was a *six*
year difference of age between the plaintiff and the comparator. In this case, Defendant
argued in its dispositive motion that an *eight* year difference is insufficient. *See
Waterhouse* 124 F.Supp.2d at 7.

27 (D.D.C. 1987). It is precisely this big "Unless" that Plaintiff seeks to prove and can do so with proper development through discovery.

It is important to note, moreover, that the *Vasilevsky* opinion is replete with references to discovery evidence, e.g., the "Cuddihy depo." and "Corsano depo." *Id.* at 147-150.

In both *Waterhouse* and *Vasilevsky*, plaintiff's proofs of discrimination were found wanting, but this was after the opportunity for appropriate discovery. In this case, Defendant insists that Plaintiff must not have the opportunity to seek evidence and develop his case.

Similarly, in *Toulan v. DAP Products, Inc.*, 2007 WL172522, \*9 (D.Md. 2007), the plaintiff was afforded discovery. *See id.* \*6-7, referring to Toulan Deposition and Patel deposition. Toulan quoted from *Chyu v. Maryland Department of Health and Mental Hygiene*, 198 F.Supp.2d 678 (D.Md. 2002) for the proposition that the plaintiff's "self perceptions as to her qualifications in a suit like this one is irrelevant; what matters is the perception of the decision maker." Id at 683.

In Chyu, the plaintiff, a Korean female, was hired to act as a part time interviewer and translator for the Howard County Department of Health. Apparently, the event which triggered her termination from her part-time employment contract was a presentation she gave to a group of Chinese senior citizens about women's health issues, including breast and cervical cancer. During the presentation, the plaintiff's supervisor objected to the content of the presentation and interrupted on several occasions. In particular, the supervisor objected to the plaintiff's referring to herself as "Dr. Chyu", despite the fact she had no medical degree. After the meeting, the plaintiff admitted she

had no medical degree but was a Doctor of Oriental Medicine. Although not entirely

clear from the opinion, it appears that this presentation, and particularly the

misrepresentation by plaintiff of her own qualifications, led to her discharge.

In particular, Chyu apparently argued that "she had received her doctoral degree

in naturopathy and had continued her education by completing her studies in oriental

medicine, specializing in acupuncture and herbal medicine. The opinion goes on:

> She [Chyu] contends that her supervisor Rodrigues discriminated
> against her on the basis of her race and national origin by
> refusing to recognize the cultural distinction in question. There
> is no merit to this argument. Rodrigues had every right to insist
> that Chyu not portray herself as a medical doctor in discussing
> with a group of senior citizens breast and cervical cancer issues.
> When Chyu persisted in portraying herself as a "Dr.", the
> Department had every right to terminate her employment.

*Chyu v. Maryland Department of Health and Mental Hygiene*, 198 F.Supp.2d at

684.

The Chyu facts have no application to the instant case, and do not support the rule

urged by the Defendant, namely that a discrimination plaintiff's self-perception has no

weight. Clearly, the Maryland Department had every right to insist that the plaintiff not

misrepresent her qualifications and training and that she not purport to impart information

publicly about serious health matters for which she had no recognized expertise.

In contrast to Ms. Chyu, Koch has not misrepresented his qualifications. All of

his experience and credentials are easily verified. The *Chyu* case is so unique and *sui*

*generis* that it cannot establish a general rule of the type urged by the Defendant in this case.[4]

While Defendant urges this court to adopt a hard-and-fast rule that a Plaintiff's own perception of performance or qualifications can never be relevant, it also urges the Court to accept as conclusive the statements and subjective assessments of Frank Donaty as well as those responsible for the underlying performance appraisals to which he refers. Both Donaty's purported justifications and the various performance appraisals are full of subjective statements, unsupported by objective data. This Circuit has already stated that subjective statements by management officials must be approached with particular caution. *See Carter v. George Washington University*, 387 F.3d 872, 879 (D.C.Cir. 2004), *citing Aka v. Washington Hosp Center*, 156 F.3d 1284, 1289 (D.C.Cir. 1998 (en banc).

The subjective natures of the performance appraisals, as well as the subjective statements justifying the student loan denial, particularly require exploration through discovery, particularly through deposition testimony.

Defendant then launches into the argument that Plaintiff is seeking to relitigate the performance evaluations upon which Donaty's decision was based. Donaty's decision, however, was not based solely on performance evaluations. It also was based on his own subjective assertions about Koch's qualifications. These subjective assertions require examination through discovery. Further, as Plaintiff previously noted in his Rule 56(f) motion, not all performance appraisals were covered by the previous lawsuit.

---

[4]    Plaintiff Chyu, moreover, neither filed an opposition to the defendant's dispositive motion nor did she seek discovery through a Rule 56(f) motion. She thereby conceded the agency's motion for summary judgment.

Defendant cites two cases purportedly justifying his argument that discovery should be disallowed. In one, *Hunt v. District of Columbia*, 41. F.Supp.2d 31, 38 (D.D.C. 1999), the Court denied a rule 56(f) motion where plaintiff failed to adequately allege employment discrimination and retaliation claims and where the requested discovery covered issues not relevant to the Court's decision.

Nowhere in Defendant's Dispositive Motion or the opposition to Plaintiff's Rule 56(f) motion, does Defendant state how Plaintiff's allegations are inadequate. If anything, Plaintiff's claims are well-pleaded and adequately allege his claims. Further, Defendant has not said anything about how Plaintiff's requested discovery is not relevant.

Defendant cites *Richardson v. National Rifle Association*, 879 F.Supp. 1, 3 (D.D.C. 1995) as justification for denying discovery. In that case, however, this Court denied *additional* discovery where the plaintiff failed to argue what *additional* information would raise any genuine issue of material fact. Here, Koch seeks not *additional* discovery, he seeks *initial* discovery.

Oddly, Defendant apparently cites these two cases for the proposition that Plaintiff has not adequately described what he would obtain from discovery. Yet Defendant also states that Plaintiff has filed a "voluminous" Opposition and Rule 56(f) Motion. In that "voluminous" filing, Koch presented a comprehensive, detailed and specific list of areas and items that require discovery.

## II.    Plaintiff is Not Using the Present Case to Re-Litigate the Legitimacy of His Annual Performance Reviews.

Defendant cannot argue that Plaintiff is re-litigating his performance reviews when they have not been litigated the first time. Such issues or claims must be subject to final disposition by the Court, either by trial or dispositive motion before they can be said

to be litigated. Unless and until there is a final court disposition of those matters, Defendant cannot argue that they are now being *re*-litigated.

As Plaintiff stated in his prior filing with this court, should the matters actually be litigated—and there is no certainty that they will be until a final court disposition—the proper course is for the Defendant to seek collateral estoppel to foreclose duplicative litigation.

There are many methods to safeguard parties from onerous or unduly burdensome discovery. Defendant is free to object should Plaintiff engage in duplicative, abusive or unduly burdensome discovery. Defendant is free to bring any disputes to the court for resolution. Instead, Defendant seeks to define the nature and content of Plaintiff's discovery and urges the Court to prohibit in advance what he thinks Plaintiff will do.

Defendant now also asserts that Plaintiff seeks to relitigate his performance appraisals because the Federal Circuit Court of Appeals upheld the MSPB's dismissal of Plaintiff's whistleblower claim.

This argument is without merit. Neither the MSPB nor the Federal Circuit had the jurisdiction to consider whether the performance appraisals were the result of unlawful discrimination or retaliation under the civil rights laws. The MSPB and the Federal Jurisdiction only had the jurisdiction to determine whether the performance appraisals were the result of whistleblower retaliation.

In both proceedings, moreover, Plaintiff was denied essential due process and was denied the full and fair opportunity to present and litigate his case.

In the MSPB, Plaintiff was denied the opportunity to participate in the proceedings because of his severe medical illness. Plaintiff had no real and meaningful

13

opportunity to conduct discovery, he was denied to opportunity to retain counsel, and, in

Plaiintiff's opinion, the proceedings were tainted by ex parte contacts between the SEC's

counsel and the hearing examiner.

The Federal Circuit decision is badly tainted by the very serious misconduct of

the Department of Justice attorney, who submitted, for the first time, new non-record

documents with his brief. This action violated the fundamental principle that an appellate

court cannot consider non-record documents for the first time on appeal.

This Court should give no weight to the Federal Circuit decision—it has no

relevance to and never addressed the issues involved in this controversy.

Defendant goes on to present additional implausible and misleading arguments.

Defendant cites a 2003 (sic) SEC Final Agency Decision which purportedly dismissed

certain discrimination claims. According to Defendant, this Court dismissed plaintiff's

subsequent complaint (C.A. 00-2097) for failure to exhaust administrative remedies.

Defendant appears to be very confused.

Civil Action 00-2097 was filed in 2000, or three years before the 2003 Final

Agency Decision. Further, the Civil Action never involved a Final Agency Decision,

because the SEC's Office of Equal Employment Opportunity never accepted Plaintiff's

administrative complaint on grounds it was allegedly filed late. (The SEC's fax machine

wouldn't accept the timely faxed complaint.) There was no decision on the merits of any

performance appraisal. Further, as Plaintiff recalls, the performance appraisal that might

have been challenged (but never litigated) would have been done in 1998. Plaintiff does

not have the records from that lawsuit readily available, but if he is correct in his

14

recollection, than the Defendant's argument that the 1998 appraisal has already been litigated in another pending lawsuit is totally without merit.

Further, Defendant also cites another lawsuit (C.A. 02-1492) currently before the Court as a basis for denying Plaintiff's right to reasonable discovery in this action. Plaintiff cannot be *re*-litigating the issues in that lawsuit, given the fact that *no* issues have been litigated. There has been no disposition on the merits and, until there is final disposition of the issues, there can be no argument for preclusion. Only when the issues have been presented for disposition, either by motion to the Court, or trial, there can be argument that the issues are being *re*-litigated. In essence, Defendant is trying to foreclose any litigation without resort to the proper and well-established doctrine of issue preclusion and collateral estoppel.

As Plaintiff already stated in his Rule 56(f) Motion, several other performance appraisals on which Donaty relied were subsequent to the time period covered by C.A. 02-1492. At most, out of the appraisals between 1998 and 2002, upon which Defendant now relies, it appears that there might only be one or two years—1999 and 2000—which arguably, could be the subject of the alleged duplicative litigation. If Plaintiff is correct in his recollection, most of the years--1998, 2001 and 2002--would be addressed for the first time in the instant case.

Donaty's denial of the student loan reimbursement went beyond performance appraisals. Obviously, such material was not at issue in the earlier lawsuit and Plaintiff has a right to examine Donaty's motivations and thinking regarding his decision. Further, Plaintiff has a right to examine the decision-making process of others involved in the student loan reimbursement program, including the human resource officials who

made the final decisions. Plaintiff also is entitled to seek information concerning those individuals selected for the program, their qualifications, as well as statistics regarding the ages of those who applied and those who were accepted.

None of this involves "re-litigation" of matters already "litigated."

Defendant also argues that Plaintiff *had* the opportunity to depose Donaty with respect to the performance appraisals. Aside from the problem already mentioned with respect to that argument—that only a few of the performance appraisals overlap--the fact that Plaintiff had an "opportunity" to depose someone on a particular issue does not mean that Plaintiff should or could have done so. It does not mean that Plaintiff knew the full relevance of those appraisals in the context of the student loan reimbursement. Defendant is substituting its own judgment for Plaintiff's in determining litigation strategy in a different case. The performance appraisals appear in a different context in this case, and must be examined in relation to the ultimate personnel action, the denial of the student loan reimbursement.

Defendant's argument becomes even more far-fetched when he suggests that there is a "complete Report of Investigation that was compiled in connection with plaintiff's current allegations, which has been provided to plaintiff, which includes the testimony of plaintiff and Mr. Donaty as well as all the relevant documentation."

Not so.

Such "Report of Investigation" was compiled by the SEC's Office of Equal Employment Opportunity. It is neither complete nor impartial. As part of his discovery, Plaintiff will seek the deposition testimony of several former employees of that office who can testify truthfully and dispassionately with respect to whether such investigations

are impartial and unbiased or rather, whether they are designed to vindicate the agency. In particular, the Report of Investigation compiled in this case badly distorted the gravamen and scope of Plaintiff's complaint and redefined entirely the case to suit the agency. For example, there was no objective comparative analysis of Plaintiff's qualifications and those of others who were selected for the program. The SEC's internal investigation did not investigate Plaintiff's disparate impact claim, and Plaintiff was informed by an employee of the SEC EEO office that the office essentially narrowed the focus to that of the smallest possible office, thus narrowing impermissibly the population of relevant comparators and nullifying Plaintiff's claim of agency-wide discrimination.

Further, Defendant's argument that the SEC's Report of Investigation is sufficient to replace discovery at the District Court level would mean a judicial rewriting of the statutes. It would turn the right of trial de novo into a limited scope appellate review by the District Court of the agency's own EEO decisions.

Defendant's argument is truly breathtaking—and very, very wrong.

Finally, Defendant asserts that there are no facts that Plaintiff can elicit in testimony which would permit a reasonable trier of fact to conclude that Plaintiff has the requisite high or unique qualifications.

Not true. Discovery will enable Plaintiff to discover precisely what standards were applied, what kind of qualifications were possessed by the various comparators, and whether evaluation of Plaintiff's qualifications was done fairly, free of the taint of discrimination and retaliation. As noted, the asserted appraisal of Koch's qualifications is replete with subjective assertions, precisely the type that can readily serve as a cover for

discrimination and retaliatory animus. In such a situation, the case is particularly strong

for examination through discovery.

**III.    Plaintiff Has Alleged Facts Sufficient to Show That He Possessed the
          Requisite Qualifications for the Student Loan Reimbursement Program and
          That Donaty's Actions Were Infused With Illegal Discrimination and
          Retaliation.**

As noted in his Rule 56(f) motion, Plaintiff is not required at this stage to

establish a prima facie case. Because he has not yet filed an opposition to the premature

motion for summary judgment, Plaintiff's only obligation is to file a complaint which

meets minimum requirements to put Defendant on notice of his claims. Defendant has

not filed a motion for a definite statement, nor has he stated why Plaintiff's complaint is

deficient.

Defendant is incorrect, moreover, in arguing that Plaintiff has failed to allege facts

which show that he meets the other requirements for the program.

Defendant has not shown how it determines whether a particular individual is

likely to leave the agency if he or she does not receive a student loan reimbursement.

Plaintiff has considered leaving the agency, and the fact that he has not since 2003 does

not mean that Plaintiff did not meet that criterion in 2003. Further, Plaintiff can show

that Kevin Rupert, Defendant's alleged comparator, had no intention of leaving,

particularly for a position with a private sector employer. Plaintiff has had far more

private sector professional experience than did or does Rupert, and was much more likely

to leave than Rupert ever was. Plaintiff can show, after discovery, that the SEC did not

consistently or strictly apply this requirement. Discovery will show that many recipients

of the student loan reimbursement never had any intention of leaving the agency, and

never would have had they not received the student loan reimbursement.[5] Defendant now

urges a much stricter application of this requirement to Koch than it demanded for the

other successful applicants for reimbursement. This in and of itself could constitute

unlawful discrimination and/or retaliation.

IV.    **Defendant's Argument That Plaintiff Cannot Make Out A Disparate Impact
Age Discrimination Case Is Without Merit.**

Defendant cites a case, *Rosell v. Kelliher*, 468 F.Supp.2d 39 (D.D.C. 2006), *aff'd*

*Rosell v. Kelliher*, 2006 WL 4056985 (D.C.Cir. 2006), *rehearing en banc denied* (Jan.

23, 2007), for the argument that Koch's disparate impact challenge must fail because the

court rejected the argument that the student loan repayment program was intrinsically

discriminatory on the basis of age.[6]

Defendant seeks to takes the *Rosell* findings far beyond Judge Leon's findings.

The Rosell plaintiff argued simply that the student loan repayment program was

---

[5]    As Koch noted in his Rule 56(f) motion, the SEC lost an arbitration proceeding to
the National Treasury Employees Union over age discrimination in a related program
concerning reimbursement for PLUS loans. The arbitrator found that the SEC actually
discriminated against older employees by seeking to deny them reimbursements. The
SEC apparently attempted to do so on grounds that the older and more senior employees
were less likely to leave the agency for other positions if they did not receive the
reimbursement. In other words, the SEC's stricter application of the retention
requirement resulted in a disparate impact, and thus discrimination, against older
employees. Since filing his Rule 56(f) motion, plaintiff has learned that the SEC has
apparently conceded the arbitrator's finding and settled the dispute with the union. This
arbitration demonstrates that the agency, when it first instituted the program, was not
scrutinizing the retention requirement with the same rigor that Defendant now purports to
apply to Koch. Plaintiff needs to discover whether Koch's comparators were subject to
the same strict requirement on the retention criterion that Defendant now argues should
be applied to Koch. A relaxed application of this requirement—as Koch believes was
applied to Rupert and to others—and a strict application to Koch, can itself be unlawful
discrimination. .
[6]    The Court of Appeals did not address the age discrimination aspect in its
summary affirmance.

intrinsically discriminatory based on age. In other words, the plaintiff essentially argued that the government-wide program was *per se* discriminatory. Even if that argument is rejected, a question not resolved in the instant case is whether the SEC's student loan repayment program, even as an agency-specific adoption of a government-wide program, is discriminatory in operation. This is a question of fact that must be addressed fully in discovery.

The *Rosell* decision did not mention disparate impact theory. There is no hint that the plaintiff argued such a theory. Nevertheless, it appears that the *Rosell* court was making essentially an argument that the student loan reimbursement program can survive because it is based on a "reasonable factor other than age" ("RFOA"). While the private sector age discrimination statute, 29 U.S.C. §623 contains an "RFOA" clause (§623(f) or ADEA §4(f)(1)), the federal sector age discrimination provision, 29 U.S.C. § 633(a), apparently does not.

Plaintiff suggests that *Rosell* does not settle the issue of whether there can be a federal sector disparate impact age discrimination cause of action over the student loan program; the fact there is a business necessity or the program is based upon a "reasonable factor (retention) other than age", as *Rosell* seems to argue, is not dispositive. If such a factor can be implied into § 633a, then the SEC will have to demonstrate it and Plaintiff has the right to discover and seek to rebut the defense; summary judgment, therefore, is inappropriate.

Still, if the program is not intrinsically discriminatory, than Koch can still prove it has a disparate age discriminatory impact in operation. He is entitled to seek to prove it

through statistical means, and discovery is appropriate. Summary judgment at this stage is not.

In the event that Plaintiff proves unsuccessful in proving disparate impact because older employees are receiving the benefits, it suggests therefore that the SEC is not applying the retention standards with the same rigor it seeks to apply to Plaintiff now.

Plaintiff has had several conversations with the immediate past president, Michael Clampitt, of the SEC's union, the NTEU, including one on the date of this filing. Koch and Clampitt discussed again the compelling information regarding the SEC's misapplication of the various retention programs, i.e., retention bonuses, pay parity, and student loan reimbursements. In each case there is sufficient evidence that the SEC is not giving the benefits to those most likely to leave. For example, Clampitt and Koch know of some individuals receiving retention bonuses notwithstanding the fact that the program, according to Clampitt, was supposed to be abolished after pay parity. Further, these individuals have never had any intention of leaving to go to the private sector, a requirement as well for that program. The pay parity program, moreover, was distorted to give a disproportionate share to middle-aged, mid-level managers (Branch Chiefs and Assistant Directors), who were the least likely to leave.

In this case, it can be easily established—after discovery—that at least one comparator, Kevin Rupert had no intention of leaving to a higher-paying private sector job. Either the SEC is operating the student loan program in a manner with a discriminatory impact, or they are not. And if they are not, most likely they are applying relaxed standards to those who not likely to leave and not likely to possess the requisite superior credentials, in contrast to the strict standards they urge with respect to Koch.

## CONCLUSION

Defendant's many arguments fail.  Koch is not seeking to re-litigate claims already litigated, he is not seeking to perform duplicative discovery.  Defendant has advanced many meritless arguments about how non-preclusive decisions in other courts or administrative investigations all nullify the right of discovery in this case.  Defendant has failed to come up with a convincing argument as to why disparate impact analysis does not apply in the federal sector, and why it does not apply to the SEC's student loan repayment program.  He has failed to show why Koch was not discriminated against on some other basis or was not the victim of Donaty's retaliation.

What Defendant appears to be really doing is playing the "frequent filer" card, seeking to impress upon the Court the necessity to dismiss a valid claim and valid request for discovery because Plaintiff has filed multiple actions.  The Defendant is playing that card from the bottom of the deck, however.  It is the Defendant who has been responsible for the multiplicity of claims, refusing to take meaningful steps early on to resolve the dispute, repeatedly refusing to amend or consolidate successive claims, thus forcing Plaintiff to pursue multiple, fragmented actions. It is Defendant, the SEC, which has been and is burdening the Court, not Plaintiff Koch.  It is the SEC which has engaged in repeated patterns of discrimination and serial retaliation, at great cost to the public fisc. Koch is simply the victim, as are the American taxpayers.

Defendant's motion should be denied.  Plaintiff's right to pursue reasonable discovery should be granted.

Respectfully submitted,

$5/11/07$
Date

RANDOLPH S. KOCH
Plaintiff
7701 Woodmont Avenue, Apt, 807
Bethesda, MD 20814
(W) 202-551-6984
(O) 301-656-0645

## CERTIFICATE OF SERVICE

Plaintiff Randolph S. Koch hereby certifies that he caused to be served the attached *Plaintiff's Reply Memorandum to Defendant's Opposition to Plaintiff's Rule 56(f) Motion* by depositing same in first class mail, postage prepaid, on May 11, 2007, addressed to the following person:

Marina Braswell, Esq.
Office of the U.S. Attorney
     for the District of Columbia
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530


5/11/07
Date

RANDOLPH S. KOCH